STATE OF NORTH CAROLINA v. JOE ROBINETTE

No. 7629SC855

(Filed 20 April 1977)

1. **Criminal Law § 26.2— indictment for felony-murder — motion to dismiss underlying felony charges**

    The trial court properly denied defendant's motion to dismiss charges of felonious breaking and entering and felonious larceny on the ground that he has been indicted for murder committed in the perpetration of those felonies where defendant has not been brought to trial on the murder charge, since no problem of double jeopardy can arise until defendant has been arraigned on the murder charge.

2. **Burglary and Unlawful Breakings § 5.3; Larceny § 7— aiding and abetting in breaking and entering and larceny**

    The State's evidence was sufficient to support defendant's conviction of felonious breaking and entering and felonious larceny as an aider and abettor where it tended to show that defendant drove in an automobile to the scene of the crimes with the three men who actually committed the offenses; while these men were actively engaged in breaking and entering a house and stealing property therefrom, defendant remained close by in an automobile, driving up and down the road in front of the house and keeping the automobile's motor running; and as the three men left the house, one carrying a stolen money box, defendant drove the automobile to a point near the front of the house, where he was stopped by police officers.

3. **Larceny § 7— ownership alleged in parent — property owned by minor child — no fatal variance**

    There was no fatal variance between indictment and proof in a larceny case where the indictment alleged ownership of the stolen property in a specified person and the evidence showed that, although

the property belonged to his minor child, it was kept in the specified person's residence, and he had custody and control of the property of his minor children kept therein, since the unlawful taking from the person in lawful custody and control of the property is sufficient to support the charge of larceny.

4. **Criminal Law §§ 9.4, 113.7— aiding and abetting — necessity for instruction**

The trial court in a prosecution for felonious breaking and entering and larceny erred in failing to instruct the jury on the law applicable to one who aids and abets another in the commission of a felony where all the evidence disclosed that defendant remained in an automobile during the entire time the crimes were being committed by others, and the State's case was based entirely on the theory that defendant aided and abetted in the perpetration of the crimes.

APPEAL by defendant from *Kirby, Judge*. Judgments entered 17 June 1976 in Superior Court, McDowell County. Heard in the Court of Appeals 5 April 1977.

Defendant was indicted for (1) felonious breaking and entering and (2) felonious larceny. Charles Hall and Mark Rice were indicted for the same offenses. A fourth participant, Billy Hughes, was killed by a sheriff's deputy during commission of the crimes. Defendant was tried separately and pled not guilty to both charges.

The State's evidence showed: In September 1975 Dr. James Johnson lived on Airport Road, which runs north and south near Marion in McDowell County. On 9, 10, and 11 September 1975 the Johnson residence was kept under surveillance by members of the McDowell County Sheriff's Department, who stationed themselves in the woods at the edge of the yard. On 9 September 1975 a 1970 black-over-red Chevrolet automobile with a loud muffler, carrying four or five people, drove up and down the road in front of the Johnson residence three times. On 10 September 1975 the same vehicle again drove up and down Airport Road several times and at one time pulled into Dr. Johnson's driveway. Billy Hughes was the driver. One of the occupants of the vehicle got out, went to the house, and knocked on the door. He and the vehicle then left. Shortly thereafter Mark Rice knocked on the door. He then left the house and walked south on Airport Road. A few minutes later the Chevrolet also traveled south on Airport Road.

On 11 September 1975 the Chevrolet, carrying at least four people, again drove by the Johnson residence. It traveled

north of the residence approximately 150 yards and stopped. A door slammed on the vehicle. A few minutes later Hughes, Hall, and Rice walked up to the back door of the residence and entered it. Twelve to fifteen minutes later they came out. In the meantime, while the three men were still in the residence, the Chevrolet traveled back south on Airport Road past the residence, returning three to five minutes later traveling north. Defendant was the driver. After the car passed north of the residence, one of the officers heard it idling for some time. When the three men came out of the residence, Hughes was carrying a money box. One of the officers stepped into the yard and called on the three men to halt. Instead, they ran in different directions. Hughes fired a small pistol at the officers and ran out onto the road. In an exchange of gun fire, Hughes fell fatally wounded. As Hughes ran out onto the road pursued by the officers, the Chevrolet driven by the defendant came up the road toward him. The officers stopped it and arrested the defendant. The metal box which Hughes had carried from the house was found between the house and the road. It contained old coins and some currency. Dr. Johnson testified that it contained his seventeen year old son's coin collection, that it was kept in his son's room, and that he had not authorized anyone to enter his residence or to remove the box.

Defendant offered evidence to show that he worked in Burke County on 9 and 10 September, but that he did not go to work on 11 September because of the weather. Defendant's wife testified that on the morning of 11 September 1975 defendant had breakfast with her at a restaurant, that Hall was at the restaurant and was drinking, that defendant had a conversation with Hall, and that defendant left in a red and black car.

The jury found defendant guilty as charged in both cases. From judgments imposing prison sentences, defendant appealed.

*Attorney General Edmisten by Assistant Attorney General Thomas B. Wood for the State.*

*Story, Hunter & Goldsmith, P.A., by C. Frank Goldsmith, Jr., for defendant appellant.*

PARKER, Judge.

[1] In apt time defendant moved to dismiss the charges in this case on the ground that he had also been indicted for the

first degree murder of Billy Hughes. He contends that since the State's theory in obtaining the first degree murder indictment was the so-called "felony-murder rule," i.e., a murder committed in perpetration of another felony, the lesser felonies for which defendant was tried in these cases became merged in the murder charge, and that for that reason it was error for the trial court to refuse to dismiss them so long as the defendant was still under indictment for murder. We do not agree. Defendant has not been brought to trial on the murder charge. Until that shall occur, the State remains free to proceed against him in the present cases. Until he is arraigned on the murder charge, no problem of double jeopardy can arise.

[2] We also find no error in denial of defendant's motions for nonsuit. There was ample evidence from which the jury could find that on the day the crimes were committed defendant drove in an automobile to the scene of the crime with the three men who actually committed the offenses; that while these men were actively engaged in breaking and entering the house and stealing property therefrom, defendant remained close by in the automobile, driving up and down the road in front of the house and keeping the automobile's motor running; and that as the three men left the house, one carrying the stolen money box, the defendant drove the automobile back on the road to a point near the front of the house, where he was stopped by the officers. These findings would support verdicts finding defendant guilty of both charges as an aider and abettor. *State v. Curry,* 25 N.C. App. 101, 212 S.E. 2d 509 (1975).

[3] Nor do we agree with defendant's contention that the larceny count should have been dismissed for fatal variance between the indictment and the proof. It is true that the indictment alleges ownership of the stolen property in Dr. James Johnson, while the evidence is that it belonged to his minor child. The evidence also shows, however, that it was kept in Dr. Johnson's residence, and he had custody and control of the property of his minor children kept therein. He, therefore, had possession, "which was equivalent to a special property therein." *State v. Hauser,* 183 N.C. 769, 770, 111 S.E. 349, 350 (1922). "The fact that an indictment charges a defendant with larceny of property from a specified person and the evidence discloses that such person is not the owner but is in lawful possession at the time of the offense, does not render the indictment invalid. There is no fatal variance, since the unlawful taking from

the person in lawful custody and control of the property is sufficient to support the charge of larceny." *State v. Cotten,* 2 N.C. App. 305, 308, 163 S.E. 2d 100, 102 (1968); *accord, State v. Smith,* 266 N.C. 747, 147 S.E. 2d 165 (1966). The case of *State v. Eppley,* 282 N.C. 249, 192 S.E. 2d 441 (1972), cited by defendant, is distinguishable and does not control on the facts of the present case. In that case the indictment alleged ownership of the stolen property in one Carriker, while the evidence disclosed Carriker's father was the owner. That case did not involve, as the case before us does, the special custodial interest which a parent has in the property of his minor child kept in the parent's residence. We hold that defendant's motion for nonsuit in both the breaking and entering and in the larceny cases were properly denied.

[4] For error in the charge, however, there must be a new trial. In apt time the defendant made written request that the court instruct the jury on the law concerning aiding and abetting. The court did not do so, but instructed the jury as follows:

> "Now, members of the jury, for a person to be guilty of a crime, it is not necessary that he, himself, do all of the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit breaking and entering and larceny, each of them is held responsible for the acts of the other done in the commission of the crime of breaking or entering and larceny."

At no place in the charge did the court instruct the jury on the law applicable to one who aids or abets another in the commission of a felony. The court's instruction concerning "acting in concert," which appears to have been taken practically verbatim from the pattern jury instructions, had no application under the evidence in this case.

In *State v. Mitchell,* 24 N.C. App. 484, 486, 211 S.E. 2d 645, 646-47 (1975), Clark, J., speaking for this Court said:

> "A participant in the commission of a felony may be a principal in the first degree or a principal in the second degree. A person who actually commits the offense or is present with another and does some act which forms a part thereof, although not doing all of the acts necessary to constitute the crime, is a principal in the first degree. One

State v. Robinette

who is actually or constructively present when the crime is committed and aids or abets the other in its commission is a princpal in the second degree. Both are equally guilty. *State v. Minton,* 234 N.C. 716, 68 S.E. 2d 844 (1952) ; *State v. Keller,* 268 N.C. 522, 151 S.E. 2d 56 (1966). In *State v. Allison,* 200 N.C. 190, 156 S.E. 547 (1931), the distinction between principals in the first and second degree was characterized as a distinction without a difference, but the distinction is still maintained in recent decisions. See *State v. Wiggins,* 16 N.C. App. 527, 192 S.E. 2d 680 (1972) ; *State v. Lyles,* 19 N.C. App. 632, 199 S.E. 2d 699 (1973).

Though 'principals in the first and second degree' have disappeared from courtroom parlance, the trial judge has the burden of recognizing the difference where there is evidence that the defendant and another are associated in the perpetration of the crime charged. If the defendant is present with another and with a common purpose does some act which forms a part of the offense charged, the judge must explain and apply the law of 'acting in concert.' This would constitute a principal in the first degree under common law. If a defendant was actively or constructively present and did no act necessary to constitute the crime but aided and abetted the other in the commission thereof, the trial judge must explain and apply the law of 'aiding and abetting.' This would constitute a principal in the second degree under common law. Too, the evidence may require the judge to charge on both 'acting in concert' and 'aiding and abetting.' "

In the present case, there was no evidence that defendant himself broke or entered the house. On the contrary, all of the evidence discloses that during the entire time the crimes were being committed by others, defendant remained in the automobile. The State's case was based entirely on the theory that defendant aided and abetted in perpetration of the crimes. There was ample evidence that defendant did aid and abet; there was no evidence that he acted in concert. It was error for the court to fail to instruct the jury on the law arising on the evidence in this case, and for this error defendant is entitled to a

New trial.

Judges BRITT and MARTIN concur.