STATE v. SLUKA

[107 N.C. App. 200 (1992)]

Reversed and remanded.

Judges ARNOLD and EAGLES concur.

---

STATE OF NORTH CAROLINA v. SAM DAWSON SLUKA, SR., AND WILLIAM
RANDOLPH LEWIS, DEFENDANTS

No. 916SC1018

(Filed 4 August 1992)

1. **Burglary and Unlawful Breakings § 85 (NCI4th) — felonious
breaking or entering — evidence sufficient**

    The trial court did not err by denying defendants' motions
    to dismiss for insufficient evidence a prosecution for felonious-
    ly breaking or entering a hog house/roost where the evidence,
    though circumstantial, was sufficient for the jury to infer that
    defendants, acting in concert, entered the hog house/roost with
    the intent to commit larceny.

    **Am Jur 2d, Burglary §§ 24, 45, 66-68.**

2. **Larceny § 7.8 (NCI3d) — felonious larceny — evidence sufficient**

    There was sufficient evidence in a prosecution for felonious
    larceny of tools and fowl to permit the jury to find that the
    defendants took property belonging to Lee without his con-
    sent, carried it away from where it was stored or had roosted
    with the intent to deprive Lee of the property permanently,
    and the property was taken pursuant to a breaking or entering.

    **Am Jur 2d, Larceny §§ 155-163.**

3. **Larceny § 7.4 (NCI4th) — doctrine of recent possession —
evidence sufficient**

    The trial court did not err in a prosecution for felonious
    larceny and felonious breaking or entering by instructing the
    jury on the doctrine of recent possession where there was
    sufficient evidence to show that defendant Lewis had joint
    possession of the stolen property with defendant Sluka, with
    whom Lewis had acted in concert in committing the offenses.

    **Am Jur 2d, Larceny § 162.**

**4. Appeal and Error § 147 (NCI4th)— instructions—failure to object—not addressed on appeal**

Defendants failed to preserve their right to present on appeal an argument regarding an instruction where they failed to object to the wording of the instruction at trial even though they were given the opportunity to do so. N.C.R. App. P. 10(b)(2).

**Am Jur 2d, Appeal and Error § 545.**

**5. Criminal Law § 365 (NCI4th)— breaking and entering and larceny—no expression of opinion by the court**

There was no improper expression of opinion by the trial court in a prosecution for breaking or entering and larceny.

**Am Jur 2d, Trial § 272.**

**Prejudicial effect of trial judge's remarks, during criminal trial, disparaging accused. 34 ALR3d 1313.**

**6. Evidence and Witnesses § 1362 (NCI4th)— finding of no probable cause in district court—motion in limine to prohibit mention**

There was no prejudicial error in a prosecution for breaking or entering and larceny where the trial court granted the State's motion in limine to prohibit defense counsel from mentioning that no probable cause was found when the cases were heard in district court.

**Am Jur 2d, Criminal Law § 413.**

APPEAL by defendants from judgments entered 13 March 1991 by *Judge Cy A. Grant, Sr.* in NORTHAMPTON County Superior Court. Heard in the Court of Appeals 11 May 1992.

Defendants were both convicted of felonious breaking or entering and felonious larceny. Each received a three year active sentence for the breaking or entering, and a suspended sentence for the larceny. From the judgments entered, defendants appeal.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General V. Lori Fuller, for the State.*

*Donnie R. Taylor for defendant-appellant Sluka.*

*A. Jackson Warmack, Jr. for defendant-appellant Lewis.*

LEWIS, Judge.

Defendants first assign as error the denial of their motions to dismiss made at the close of the evidence. The question for the trial court upon a motion to dismiss is whether there is substantial evidence of each essential element of the offense charged and of the defendant's being the perpetrator of the offense. *State v. Malloy*, 309 N.C. 176, 305 S.E.2d 718 (1983); *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). If such evidence has been presented, the motion is properly denied. *Earnhardt*, 307 N.C. at 62, 296 S.E.2d at 652. In determining the sufficiency of the evidence to take the case to the jury, the court must view all the evidence in the light most favorable to the State, must give the State the benefit of every reasonable inference that may be drawn therefrom, and is not to take into consideration the defendant's evidence unless it is favorable to the State. *Id.*

The evidence here, so viewed, shows the following: On 31 March 1990, Irvin Moody, Jr., who was looking for someone from whom he could purchase some chickens and turkeys, was introduced to defendant Sluka. During their conversation, Sluka regretted that he was unable to accommodate Moody and expressed his own interest in purchasing some peacocks and guineas. Moody said he knew someone who might be willing to part with such fowl, and agreed to introduce Sluka to a Mr. Lee the next day. As agreed, on 1 April 1990, Moody met Sluka, who was accompanied by the defendant Lewis, and the three men went to the hog house where Lee kept his birds. Finding no one at the hog house, the men went to Lee's home, located a mile or two away. There, they spoke with Lee's son who told them that his father was away at an auction. Thereafter, Moody and Sluka both purchased some turkeys from still another purveyor of fowl in the area and went their separate ways.

On a rainy 2 April 1990, shortly before 11:00 p.m., Jesse Coker and his wife, who live across the highway from the Lee hog house, heard what sounded like a truck in the vicinity of the hog house. They looked across the road and observed a truck being driven up the road to the hog house. The truck stopped short of the hog house and its lights went out. The Cokers did not recognize the truck as belonging to Lee and called Lee at his house to tell him about the truck. Lee sprang from his repose, grasped his handgun and flew to his hog house, arriving within "five or ten minutes."

As Lee approached the hog house, which he did not lock, he saw a truck with its lights off backed up to the front door of the hog house. Defendant Sluka, who was in the driver's seat of the truck, started driving towards Lee's vehicle but did not turn the truck's lights on until he was about 100 feet away from the hog house. The defendants in their truck approached Lee, in his vehicle. When the two vehicles met, facing each other, Lee recognized Sluka and Lewis as the men in the truck. Lee backed down the path to a point where the two vehicles could pass each other. Lee had a flashlight shining on the truck. Sluka told Lee that they were trying to get to Virginia but were lost. Lee gave them directions. As they spoke, Lee noticed that the defendant Lewis, who was in the passenger seat of the truck, was soaking wet and that Sluka was also wet but less so. The rain had been falling heavily all that evening. As Sluka's truck began to roll past him, Lee beamed his flashlight into the back of the truck and recognized personal property, which he kept inside and around his hog house. He yelled for Sluka and Lewis to stop but they paid no heed to his plea. Lee turned around and followed the truck out of the hog house path and onto the highway; he pulled in front of the truck, and stopped so as to block the truck from proceeding further.

Lee stepped out of his vehicle and holding his pistol by his side told Sluka and Lewis that the items in the back of the truck belonged to him. Sluka argued with him, claiming that the property was his. Lee then called for Mr. Coker to come out. When Mr. Coker failed to respond, Lee fired his pistol into the air, whereupon Mr. Coker, rifle in hand, rushed out of his house. Mr. Coker came over to assist Lee, and Mrs. Coker called the sheriff. Sluka and Lee continued to argue over who owned the property which was in the back of Sluka's truck. Coker told Lewis that he had better tell the truth if he did not want to go to jail, at which point Lewis admitted that the property belonged to Lee. The officers arrived shortly thereafter and began investigating the matter. Lee returned to his hog house and found numerous items missing from the building and the surrounding area, including four Bantam chickens, ten guineas, and various tools, among other things. All of the items missing from the hog house were found either inside or in the back of Sluka's truck. Lee also found wet foot tracks on the cement inside his hog house and footprints on crates in the area inside the building where the chickens and guineas roosted on rafters about seven feet off the ground.

At trial, Sluka presented evidence, including his own testimony, to show that the items in the back of the truck belonged to him and to show that he had a good reputation in his community. Lewis did not testify.

[1] Defendants contend the evidence was insufficient to go to the jury, particularly because it did not show that there was a breaking or entering of the hog house/roost by either defendant. Referring to the fact that there were wet footprints in the hog house, and personal property found in the back of defendants' truck which happened to be missing from the hog house, defendants argue that the evidence is "wholly circumstantial." This position is hardly persuasive.

To support a conviction for felonious breaking or entering under N.C.G.S. § 14-54(a) (1986), there must be substantial evidence of each of the following elements of the offense: (1) the breaking or entering; (2) of any building; (3) with the intent to commit a felony or larceny therein. *State v. Walton*, 90 N.C. App. 532, 369 S.E.2d 101 (1988). Neither this statute nor *Walton* requires that the evidence be direct; rather, the evidence must be substantial. It is well-established in the appellate courts of this State that jurors may rely on circumstantial evidence to the same degree as they rely on direct evidence. *State v. Adcock*, 310 N.C. 1, 310 S.E.2d 587 (1984). The law makes no distinction between the weight to be given to either direct or circumstantial evidence. *Id.* Rather, "the law requires only that the jury shall be fully satisfied of the truth of the charge." *Id.* at 29, 310 S.E.2d at 603 (quoting *State v. Adams*, 138 N.C. 688, 695, 50 S.E. 765, 767 (1905)). We find the evidence here sufficient to permit the jury to infer that the defendants, acting in concert, entered Lee's hog house/roost with the intent to commit larceny, and therefore sufficient to withstand defendants' motions to dismiss the charge of breaking or entering.

[2] Apropos the sufficiency of the evidence of larceny, again, the defendants' contention that the evidence was insufficient to go to the jury is without merit. To support a conviction for larceny under N.C.G.S. § 14-72 (1986), there must be substantial evidence showing that the defendant: (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently. *State v. Reeves*, 62 N.C. App. 219, 302 S.E.2d 658 (1983). The crime

of larceny is a felony without regard to the value of the property stolen if it is committed pursuant to a breaking or entering. N.C.G.S. § 14-72(b)(2). Sufficient evidence was presented here to permit the jury to find that the defendants took property belonging to Lee without his consent; carried it away from where it was stored or had roosted, with the intent to deprive Lee of the property permanently; and that the property was taken pursuant to a breaking or entering. Bantam chickens and guineas do not voluntarily fly from their roost in the middle of the night into a pickup truck even if it is ostensibly headed for "Virginia." Accordingly, we find the evidence sufficient to support the convictions and find that the trial court properly denied the motions to dismiss.

[3] Defendants next assign as error the court's instructing the jury on the doctrine of recent possession. They contend that the evidence did not support the instruction because there was: (1) no evidence of a breaking or entering of the hog house; and (2) no evidence that Lewis had actual or constructive possession of the allegedly stolen property. We find this contention meritless.

As stated previously herein, the jury was presented with sufficient evidence to permit its finding that there was a breaking or entering of the hog house. With respect to Lewis's possession of the stolen property, we note that the possession required to support an inference or presumption of guilt under this doctrine need not be a sole possession but may be joint possession. *State v. Maines*, 301 N.C. 669, 273 S.E.2d 289 (1981). As our Supreme Court explained in *Maines*:

> For the inference to arise where more than one person has access to the property in question, the evidence must show the person accused of the theft had complete dominion, which might be shared with others, over the property or other evidence which sufficiently connects the accused person to the crime or a joint possession of coconspirators or persons acting in concert in which case the possession of one criminal accomplice would be the possession of all.

*Id.* at 675, 273 S.E.2d at 294. *See also State v. Walker*, 86 N.C. App. 336, 357 S.E.2d 384 (1987), *aff'd*, 321 N.C. 593, 364 S.E.2d 141 (1988), and *State v. Frazier*, 268 N.C. 249, 150 S.E.2d 431 (1966). The evidence here was sufficient to show that Lewis had joint possession of the stolen property with Sluka with whom Lewis

acted in concert in committing the offenses. Both were wet. This assignment of error will not fly.

**[4]**  Pursuant to this same assignment of error, defendants argue that the court erred in the instruction given on this doctrine. Defendants failed to object to the wording of the instruction after it was given even though they were given an opportunity to do so; therefore, they have failed to preserve their right to present this argument on appeal and we will not address it. *See* N.C.R. App. P. 10(b)(2).

**[5]**  Defendants next argue that the court prejudicially erred in expressing an opinion on the credibility of certain witnesses and on the evidence by its questions, rulings, and remarks made during the trial.

> The judge should be the embodiment of even and exact justice. He should at all times be on the alert, lest, in an unguarded moment, something be incautiously said or done to shake the wavering balance which, as a minister of justice, he is supposed, figuratively speaking, to hold in his hands. Every suitor is entitled by the law to have his cause considered with the 'cold neutrality of the impartial judge' and the equally unbiased mind of a properly instructed jury.

*State v. McBryde*, 270 N.C. 776, 778, 155 S.E.2d 266, 268 (1967), (quoting *Withers v. Lane*, 144 N.C. 184, 56 S.E. 855 (1907)). We have thoroughly examined the trial transcript and found no improper expression of opinion by the court—no incautious word or act to shake the wavering balance, and no prejudicial error as claimed by defendants. We therefore reject this argument.

**[6]**  Lastly, defendants argue that the trial court erred by allowing the State's motion *in limine* to prohibit defense counsel from mentioning at trial that no probable cause was found when the cases were heard in district court. The State made the motion on the ground that the district court heard only a portion of the State's case and therefore mention of the district court's finding would be prejudicial and misleading. Assuming *arguendo* that the court erred by allowing the motion, such error clearly was not sufficiently prejudicial to entitle defendants to a new trial given the overwhelming evidence presented against them. *See* N.C.G.S. § 15A-1443 (1988).

Defendants received a fair trial free of prejudicial error.

N.C. FARM BUREAU MUTUAL INS. CO. v. WALTON

[107 N.C. App. 207 (1992)]

No error.

Judges COZORT and WALKER concur.