STATE OF NORTH CAROLINA v. RANDALL SALTERS

No. COA99-243

(Filed 18 April 2000)

## 1. Larceny— indictment—variance—owner of stolen property

The trial court committed reversible error by failing to dismiss the charge of larceny when there was a fatal variance between the indictment and the evidence as to who was the actual owner of the stolen suitcase because: (1) the indictment did not name the proper owner of the blue suitcase allegedly stolen by defendant since it named the grandmother, and the evidence reveals the suitcase belonged to her grandchild; and (2) the grandmother did not have a "special property interest" in the child's belongings because the grandmother was not standing in loco parentis since the child's mother also lived in the home.

## 2. Burglary and Unlawful Breaking or Entering— breaking or entering—sufficiency of evidence

The trial court did not err in denying defendant's motion to dismiss the felonious breaking or entering charge because viewed in the light most favorable to the State, circumstantial evidence reveals: (1) defendant committed the entering since he was in the vicinity of the house around the time of the break-in, he gave a false alibi, and he lied about where he had gotten the suitcase; (2) defendant committed the breaking since there was a broken lock, splinters, and wood chips on the floor; and (3) defendant entered the home without consent since neither of the two persons authorized to give consent to entry in the house were ever asked directly whether they had given defendant permission to enter, one of those persons called the police upon realizing that someone broke into the home, and the front door revealed a forced entry.

Appeal by defendant from judgments entered 20 May 1998 by Judge Claude S. Sitton in Buncombe County Superior Court. Heard in the Court of Appeals 13 January 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Lorinzo L. Joyner, for the State.*

*Office of the Appellate Defender, by Appellate Defender Malcolm Ray Hunter, Jr. for defendant-appellant.*

HUNTER, Judge.

On 20 May 1998, defendant Randall Salters was convicted of felony breaking or entering and felony larceny. In a later proceeding, he was also found to be an habitual felon. Defendant appeals his convictions. Having preserved four assignments of error, he argues only two: (1) that the trial court committed reversible error in not dismissing the larceny charge due to the fatal variance between the indictment and the evidence as to who was the actual owner of the stolen suitcase, and (2) that the trial court committed reversible error in denying defendant's motion to dismiss the charge of felonious breaking or entering because the State failed to produce evidence of every element of the offense. Having reviewed the record before us, we agree with defendant that the larceny indictment should have been dismissed; however, we find defendant's second argument unpersuasive. Therefore, we reverse in part and affirm in part.

The State's evidence presented at trial tended to show that on Saturday, 8 November 1997, while driving in his neighborhood, Mr. Robert Maddox, chairman of his neighborhood community watch, saw a stranger running wildly down the street with a blue suitcase in hand. Maddox pulled along side of the individual and the man stopped running and laughed saying, "I thought you were the police." Because Maddox was suspicious, he got out of his car and confronted the man, eyeing the suitcase. In response, the man said "I didn't steal it. I got it from Michael." This incident occurred at approximately 3:30 p.m. Except for the time of day, defendant does not dispute these facts.

After watching the man leave, Maddox went into his home and got his cell phone, returned to his car, called the police, and began to follow the man. He remained on line with the police as he followed the man through the neighborhood. When the man realized he was being followed, he ducked into the "Quick as a Wink Cleaners" with the suitcase. When he emerged again from the cleaners, the man no longer had the suitcase in hand. Maddox continued following the man until he lost him when the man ran behind a nightclub. Maddox returned to the cleaners, found the suitcase and waited there until the police arrived. He, together with the police, looked in the suitcase and found it to be empty. The police left the suitcase with Maddox.

No one was home when Maddox arrived at the Justice home, but he was joined by Police Officer Johnston. The two men looked but saw no obvious signs of forced entry. Later that day, Maddox returned

to the Justice home and recounted what happened to Deborah Justice, who immediately stated the suitcase belonged to her eight-year old son, Kedrick. Deborah further stated that the man Maddox described was Randall Salters and that she and her mother, Frances, had seen him at the bus stop just up from their house when they left home earlier that day. Frances, Debbie and Kedrick all live together in the rental house.

The following Monday morning, defendant and his wife were waiting in the Justices' driveway when Frances returned from walking Kedrick to the bus stop for school. Defendant's wife said they had come over to explain that defendant had nothing to do with the break-in and theft. Frances invited them into her home and then called Maddox. Defendant stated to Frances that on the day in question, he had been visiting with Mr. Tucker, the Justices' neighbor, and then caught the bus to Mission Hospital. When Maddox arrived, he identified defendant as the man he had seen running through the neighborhood with the blue suitcase. The police later arrested defendant.

At trial, Frances Justice testified that when they arrived home on Saturday, 8 November 1997, the light was on in the living room, the front door latch appeared to have been forced open, and the door would no longer close properly. There were splinters, sawdust and small pieces of wood on the floor. The wreath that had been on the door, was now on the floor and the airline tag which had been on Kedrick's suitcase was now on the floor of his room.

[1] Defendant's first assignment of error is that the trial court committed reversible error by failing to dismiss the charge of larceny when there was a fatal variance between the indictment and the evidence as to who was the actual owner of the stolen suitcase. We agree.

In North Carolina our courts have been clear that:

[T]he general law has been that the indictment in a larceny case must allege a person who has a property interest in the property stolen and that the State must prove that that person has ownership, meaning title to the property or some special property interest. If the person alleged in the indictment to have a property interest in the stolen property is not the owner or special owner of it, there is a fatal variance entitling defendant to a nonsuit.

*State v. Greene*, 289 N.C. 578, 584-85, 223 S.E.2d 365, 369-70 (1976) (citations omitted). Furthermore, although the law acknowledges

that a parent has a special custodial interest in the property of his minor child kept in the parent's residence, *State v. Robinette*, 33 N.C. App. 42, 45-46, 234 S.E.2d 28, 30 (1977), that special interest does not extend to a caretaker of the property even where the caretaker had actual possession. *Greene*, 289 N.C. at 584, 223 S.E.2d at 369.

In the case at bar, the indictment charged defendant with stealing property owned by Frances Justice, but the evidence at trial showed the property belonged to Kedrick (Frances' eight-year old grandson). The State argues that Frances Justice was in lawful custody and control of her grandson's suitcase because it was in his room, in the house rented by her. Thus, the State maintains that she had a "special property interest" in the suitcase. However, we disagree:

> The purpose of the requirement that [proper] ownership be alleged is to (1) inform defendant of the elements of the alleged crime, (2) enable him to determine whether the allegations constitute an indictable offense, (3) enable him to prepare for trial, and (4) enable him to plead the verdict in bar of subsequent prosecution for the same offense.

*Id.* at 586, 223 S.E.2d at 370. Therefore, it was necessary that defendant's indictment name the proper owner of the blue suitcase he was alleged to have stolen.

Had Frances Justice been raising Kedrick alone and his mother been living elsewhere, there would be no doubt that Frances would have been in lawful possession of the suitcase or had a special custodial interest in the suitcase. In such a case it would be easy to extend that custodial interest where Frances was acting *in loco parentis. See* 3 Robert E. Lee, *North Carolina Family Law* § 238 at 190 (4th ed. 1981) (one who stands *in loco parentis* to a child assumes, in general, the rights and obligations of a natural parent); *State v. Robinette*, 33 N.C. App. 42, 234 S.E.2d 28 (1977) (parent has a special custodial interest in the property of his minor child kept in the parent's residence); *cf. Lehr v. Robertson*, 463 U.S. 248, 77 L. Ed. 2d 614 (1983) (where natural father never had any significant custodial, personal or financial relationship with child, court held that the rights of parents are a counterpart of the responsibilities they have assumed); *Ellison v. Ramos*, 130 N.C. App. 389, 502 S.E.2d 891 (1998) (where child lived with companion after father and companion separated and companion was responsible parent in rearing and caring for child, companion had standing to sue father for custody). However, Frances Justice had not been raising Kedrick alone. Instead, the child's mother, Deborah,

also lived in the home, raising her son. Therefore, Frances was not standing *in loco parentis* and thus, had no special interest in the child's belongings. To be effective, the indictment must necessarily have named either the child as general owner, or Deborah his mother, as special owner. *Greene*, 289 N.C. 578, 223 S.E.2d 365. Consequently, defendant's conviction for larceny must be vacated.

**[2]** Defendant next argues the trial court committed reversible error in denying his motion to dismiss the felonious breaking or entering charge where the State failed to prove every element of the offense. Specifically, defendant argues the State failed to prove that he broke or entered the Justice home, and that if there was an entry, it was without the consent of Deborah or Frances Justice. From his brief to this Court, defendant seems to argue that circumstantial evidence of his breaking or entering is insufficient to prove the State's *prima facie* case. However, we find defendant's argument unpersuasive since

> [n]either . . . statute nor [case law] requires that the evidence be direct; rather, the evidence must be substantial. It is well-established in the appellate courts of this State that jurors may rely on circumstantial evidence to the same degree as they rely on direct evidence. *State v. Adcock*, 310 N.C. 1, 310 S.E.2d 587 (1984). The law makes no distinction between the weight to be given to either direct or circumstantial evidence. *Id.* Rather, "the law requires only that the jury shall be fully satisfied of the truth of the charge." *Id.* at 29, 310 S.E.2d at 603 (quoting *State v. Adams*, 138 N.C. 688, 695, 50 S.E. 765, 767 (1905)).

*State v. Sluka*, 107 N.C. App. 200, 204, 419 S.E.2d 200, 203 (1992).

The evidence at bar tended to show the defendant was in the vicinity of the Justices' house around the time of the break-in (3:00 p.m.); that he gave a false alibi as to why he was there (he stated he was visiting with Mr. Tucker, but Mr. Tucker testified he and his family had been out of town all weekend); and, that he lied about where he had gotten the suitcase (he stated Michael had given it to him that day, but Michael, Deborah's old boyfriend, had moved out of town seven to eight months prior). We find this evidence substantial enough to fully satisfy a jury that defendant had, in fact, committed the entering. Additionally, from the evidence of the broken lock and splinters and wood chips on the floor, the jury could also have concluded defendant committed the breaking.

Defendant further argues that the State failed to present proof that if he did break or enter, he did it without the permission of Frances or Deborah Justice. Our Supreme Court has ruled that evidence is sufficient to prove lack of consent if it can support a reasonable inference by the jury that the dwelling was entered without the permission of the occupants. *State v. Sweezy*, 291 N.C. 366, 384, 230 S.E.2d 524, 535 (1976).

In the case at bar, defendant concedes that only "Frances and Deborah Justice were persons who were authorized to consent to the entry . . . into the house." The record before us shows that neither Frances nor Deborah was ever asked directly whether they had given defendant permission to enter their home. However, upon realizing that someone had broken into their home, Frances called the police to report the incident. Furthermore, from the evidence of the front door latch's being forced open so that the door would no longer close properly, and splinters and wood chips on the floor and along with Frances' decorative wreath which she had hanging on the door, we hold it was reasonable for the jury to infer that entry was not that of an invited guest. *Id.* at 383-84, 230 S.E.2d at 535. Viewed in the light most favorable to the State, we hold this evidence is sufficient to support an inference and the jury's finding that defendant entered the Justice home without consent. *See State v. Mandina*, 91 N.C. App. 686, 373 S.E.2d 155 (1988).

Based on the foregoing, the judgment of the trial court is vacated as to the larceny conviction; however, we find no error in the trial court's judgment regarding the breaking and entering conviction.

Larceny conviction vacated; no error in breaking and entering conviction.

Judges JOHN and McGEE concur.