NO. COA13-784

NORTH CAROLINA COURT OF APPEALS

Filed:  3 June 2014

STATE OF NORTH CAROLINA

    v.                          Cumberland County
                                No. 11 CRS 65063
KALAN JOHN LUCAS,
    Defendant

_____

STATE OF NORTH CAROLINA

    v.                          Cumberland County
                                No. 11 CRS 65064
SHAQUILLE OQKWONE RICHARD,
    Defendant


Appeal by defendants from judgments entered 27 March 2013 by Judge Reuben F. Young in Cumberland County Superior Court. Heard in the Court of Appeals 11 December 2013.

> *Roy Cooper, Attorney General, by Richard H. Bradford, Special Deputy Attorney General, and Susannah P. Holloway, Assistant Attorney General, for the State.*
>
> *Unti & Lumsden LLP, by Margaret C. Lumsden, for defendant-appellant Lucas.*
>
> *Guy J. Loranger for defendant-appellant Richard.*


DAVIS, Judge.

Co-defendants Kalan John Lucas ("Lucas") and Shaquille Oqkwone Richard ("Richard") (collectively "Defendants") appeal

from their convictions for second-degree burglary and conspiracy to commit second-degree burglary. On appeal, Defendants argue that the trial court erred in (1) denying their motions to dismiss the second-degree burglary charges for insufficient evidence; (2) failing to instruct the jury regarding the definition of larceny and on the offense of first-degree trespass; and (3) entering a restitution order that was not supported by competent evidence. Defendants also contend that their trial counsel provided ineffective assistance of counsel by failing to request the above-referenced jury instructions. After careful review, we vacate Defendants' convictions for second-degree burglary and remand for resentencing for felonious breaking or entering. We also vacate the trial court's restitution orders and remand to the trial court for rehearing on that issue.

## Factual Background

The State presented evidence at trial which tended to establish the following facts: On 27 November 2011 at approximately 2:30 a.m., Nina Moore ("Mrs. Moore") awoke to the sound of "erratic knocking" and the doorbell ringing at the front door of the home in Fayetteville, North Carolina that she shared with her husband, Lynard Moore ("Mr. Moore"). From a

window, Mrs. Moore observed a man wearing a dark-colored hooded sweatshirt standing at the front door. Mrs. Moore also saw another man sitting in the driver's seat of a white car parked outside their home. Mrs. Moore woke up Mr. Moore and informed him that there was someone at the door and that she thought "he needed to get his gun." Mr. Moore retrieved a gun from their safe, proceeded down the hallway, and saw that the front door had been kicked open. Mr. Moore fired three or four shots into the front entranceway. At that point, a man ran out of the house and jumped into a white car, which Mr. Moore identified as a Mercury Grand Marquis. The car then "sped away" out of the Moores' neighborhood.

Mrs. Moore called the police and informed them what had occurred. Officer Leonard Honeycutt ("Officer Honeycutt") of the Fayetteville Police Department arrived at the Moores' home, took statements from Mr. and Mrs. Moore, and issued a "be on the lookout" for a white Mercury Grand Marquis and a man wearing a "dark hoody or toboggan" and dark tennis shoes. Shortly thereafter, Officer Honeycutt received a dispatch regarding "a suspicious white vehicle" parked in front of a residence on Windlock Drive in a neighborhood approximately two miles away from the Moores' home.

Steven Pavel ("Mr. Pavel") was sitting on the front porch of his home on Birchcreft Drive when he noticed a white sedan approaching the corner of Birchcreft Drive and Windlock Drive. The driver parked the car, and the vehicle's two occupants remained inside the vehicle for several minutes. Mr. Pavel then witnessed two men exit the vehicle and approach "the first house off from the corner." Because Mr. Pavel believed that the men's actions seemed suspicious, he went inside and observed them through his window. When the men "start[ed] to walk up to the first house, casing the house and all," Mr. Pavel called 911. Mr. Pavel observed the men walk past the first home, which was vacant, and attempt to open the door of a vehicle that was parked in the next driveway.

The men then approached the second house, which was also unoccupied due to the fact that the owners, Wesley Meredith and Jennifer Meredith (collectively "the Merediths"), were out of town. It appeared to Mr. Pavel that one of the men was trying to strike the side patio door of the Merediths' home.

Mr. Pavel remained on the phone with the 911 dispatcher and related that the men had walked back down the driveway and reentered their car. After sitting in the car for several minutes, the men exited the vehicle again and walked around to

the back of the Merediths' house. A few minutes later, Mr. Pavel saw both men "running around from the back of the house." The men then jumped into their car and sat there for several minutes. Officer Honeycutt and Officer Michael Tackema ("Officer Tackema") arrived at the scene and apprehended the two men. At trial, Officers Honeycutt and Tackema identified these men as Defendants.

Officers Honeycutt and Tackema detained and searched both Defendants, and Officer Honeycutt found tube socks in their vehicle, which he noted were "very common for breaking and entering artists and thieves to put on their hands" because they were less conspicuous than gloves. Officers Honeycutt and Tackema then proceeded to inspect the area surrounding the home. They observed that the outer pane of a double-pane sliding glass door on the side of the house had been shattered. A fire pit bowl and two concrete landscaping bricks were lying on the ground near a back bedroom window that was also shattered. Several similar bricks were lying on the floor inside the bedroom where the window had been broken. There was soot covering the fire pit bowl and the back bedroom window, and the blinds hanging from that window were "somewhat ajar." The officers did not detect any soot on Defendants or their vehicle

but did locate a shard of glass on Lucas's person that appeared to be similar to the glass found at the scene.

Defendants were subsequently charged with first-degree burglary and conspiracy to commit first-degree burglary at the Moores' residence and second-degree burglary and conspiracy to commit second-degree burglary at the Merediths' residence. The matter came on for a jury trial on 25 March 2013 in Cumberland County Superior Court. On 27 March 2013, the jury returned verdicts finding Defendants (1) not guilty of first-degree burglary or conspiracy to commit first-degree burglary; and (2) guilty of second-degree burglary and conspiracy to commit second-degree burglary. The trial court entered judgments on the jury's verdicts, sentencing Defendants to a presumptive-range term of 13 to 16 months imprisonment for second-degree burglary and a consecutive presumptive-range term of 6 to 8 months imprisonment for conspiracy to commit second-degree burglary. Defendants gave notice of appeal in open court.

## Analysis

### I. Motion to Dismiss

Defendants first argue that the trial court erred in denying their motion to dismiss the second-degree burglary charges. Specifically, Defendants contend that the evidence

presented at trial was insufficient to show the elements of (1) entry; and (2) intent to commit a felony.

A trial court's denial of a defendant's motion to dismiss is reviewed *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). On appeal, this Court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator . . . ." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation omitted), *cert. denied*, 531 U.S. 890, 148 L.Ed.2d 150 (2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). Evidence must be viewed in the light most favorable to the State with every reasonable inference drawn in the State's favor. *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L.Ed.2d 818 (1995).

To survive a defendant's motion to dismiss a charge of second-degree burglary, the State must provide substantial evidence that the defendant committed a (1) breaking (2) and entering (3) of an unoccupied dwelling house or sleeping

apartment of another (4) in the nighttime (5) with the intent to commit a felony therein. *State v. Brown*, ___ N.C. App. ___, ___, 732 S.E.2d 584, 586-87 (2012); N.C. Gen. Stat. § 14-51 (2013). Because Defendants only challenge the sufficiency of the evidence regarding entry and intent to commit a felony, we limit our analysis to those two elements. *See State v. Davis*, 198 N.C. App. 146, 151, 678 S.E.2d 709, 713-14 (2009) (explaining that where defendant challenges sufficiency of evidence as to some elements "but does not challenge the State's evidence of the other elements of the crime," this Court examines only the sufficiency of the evidence concerning the challenged elements).

> [E]ntry, for the purposes of burglary, is committed by the insertion of any part of the body for the purpose of committing a felony. Thus, an entry is accomplished by inserting into the place broken the hand, the foot, or any instrument with which it is intended to commit a felony . . . .

*State v. Bumgarner*, 147 N.C. App. 409, 415, 556 S.E.2d 324, 329 (2001) (citation, quotation marks, and brackets omitted).

Our Supreme Court has further explained that "entry is the act of going into the place *after a breach has been effected*," *State v. Gibbs*, 297 N.C. 410, 418, 255 S.E.2d 168, 174 (1979) (citation and quotation marks omitted and emphasis added), and

that "the least entry with the whole or any part of the body, hand, or foot, or with any instrument or weapon, introduced for the purpose of committing a felony, is sufficient to complete the offense," *State v. Turnage*, 362 N.C. 491, 494, 666 S.E.2d 753, 756 (2008) (citation and quotation marks omitted).

In *State v. Watkins,* ___ N.C. App. ___, 720 S.E.2d 844, *disc. review denied*, ___ N.C. ___, 724 S.E.2d 509 (2012), the defendant argued that the evidence presented at trial showing that he and his accomplice used the end of a shotgun to break a townhouse window, heard movement within the residence, and immediately fled the scene was insufficient to establish the entry element of burglary. We agreed, explaining that the entry element requires the defendant to "either physically enter the residence, however slight, or commit the burglary by virtue of [an] instrument." *Id.* at ___, 720 S.E.2d at 849 (citation, quotation marks, and brackets omitted). We further noted that to constitute an entry through the use of an instrument, the instrument itself must be "used to commit a felony within the residence" rather than merely to make an opening into the residence. *Id.* at ___, 720 S.E.2d at 849. Consequently, our analysis of North Carolina case law as well as leading treatises on criminal law led us to conclude that

> the fact that defendant broke a window of the residence in the nighttime with an instrument — even if the instrument itself crossed the threshold — is not sufficient to find him guilty of burglary. . . . [V]iewing the evidence in the light most favorable to the State, it appears only that defendant broke a window of the residence with an instrument to facilitate a subsequent entry. Such evidence does not support the trial court's submitting a case of burglary to the jury.

*Id.* at ___, 720 S.E.2d at 850.

We believe that the evidence in the present case compels the same result. At trial, the State introduced circumstantial evidence tending to show that Defendants used landscaping bricks and a fire pit bowl to break a back window of the Merediths' home. Although there was soot covering the fire pit bowl and the broken window, law enforcement officers did not find soot on the person of either Defendant or within the interior of the home. Several landscaping bricks were found inside the bedroom where the window had been broken, but there was no evidence that anything within the home had been tampered with or was missing.

While Officer Honeycutt testified that the blinds hanging from the broken window were "somewhat ajar" and "parted enough that entry could have been made with a hand or body part," the State neither offered evidence that Defendants had *actually crossed* the threshold of the home nor introduced evidence

permitting a reasonable inference of such actual entry. The lack of evidence on this issue distinguishes the present case from *State v. Salters*, 137 N.C. App. 553, 528 S.E.2d 386, *cert. denied*, 352 N.C. 361, 544 S.E.2d 556 (2000), in which we held that evidence of a splintered door frame and broken lock in the residence at issue coupled with testimony that a suitcase discovered to be missing from inside the residence was seen in the defendant's possession was sufficient to allow the inference that the defendant had entered the home. *Id.* at 557, 528 S.E.2d at 390.

Nor did the State provide evidence that the landscaping bricks found inside the home were used for a purpose beyond creating an opening in the window. *See Watkins*, ___ N.C. App. at ___, 720 S.E.2d at 849 ("[W]here the State's evidence seeks to establish an entry by the defendant's use of an instrument, the defendant can only be guilty of burglary if the instrument that crossed the threshold was itself used to commit a felony within the residence."). Although a shard of glass was discovered on Lucas's person, we cannot agree with the State's contention that this amounted to substantial evidence of entry where law enforcement officers testified that there was glass "all over the ground" *outside* the Merediths' residence.

As such, we believe that this evidence failed to raise more than a mere suspicion or conjecture that Defendants entered the home. *See State v. McDowell*, ___ N.C. App. ___, ___, 720 S.E.2d 423, 424 (2011) ("A motion to dismiss should be granted . . . when the facts and circumstances warranted by the evidence do no more than raise a suspicion of guilt or conjecture since there would still remain a reasonable doubt as to defendant's guilt." (citation and quotation marks omitted)). Accordingly, we vacate Defendants' convictions for second-degree burglary.

However, because we conclude, for the reasons discussed below, that there was sufficient evidence to establish Defendants' intent to commit a felony, we remand to the trial court for entry of judgment on felonious breaking or entering. "To support a conviction for felonious breaking [or] entering under N.C. Gen. Stat. § 14-54(a), there must exist substantial evidence of each of the following elements: (1) the breaking or entering, (2) of any building, (3) with the intent to commit any felony or larceny therein." *State v. Jones*, 188 N.C. App. 562, 564-65, 655 S.E.2d 915, 917 (2008) (citation, quotation marks, and brackets omitted); *see Watkins*, ___ N.C. App. at ___, 720 S.E.2d at 850 ("For conviction of felonious breaking or entering, a violation of G.S. 14-54(a), it is not necessary that

the State show both a breaking and an entering; proof of either is sufficient if committed with the requisite felonious intent."); *State v. Barnett*, 113 N.C. App. 69, 75-76, 437 S.E.2d 711, 715 (1993) (concluding that although evidence was insufficient to sustain burglary conviction, jury — in convicting defendant of burglary — "necessarily found facts which establish felonious breaking [or] entering, i.e., the breaking [or] entering of a building with intent to commit any felony or larceny therein").

"Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Baskin*, 190 N.C. App. 102, 109, 660 S.E.2d 566, 572 (citation and quotation marks omitted), *disc. review denied*, 362 N.C. 475, 666 S.E.2d 648 (2008). Intent to commit a felony may be inferred from the defendant's acts and conduct during the subject incident. *State v. Allah*, ___ N.C. App. ___, ___, 750 S.E.2d 903, 907 (2013).

Here, the State offered testimony from Mr. Pavel describing Defendants' behavior during the incident. Mr. Pavel explained that Defendants were "casing" the neighborhood and "pull[ing] on the door handles" of cars that were parked in driveways. Mr. Pavel testified that he described their conduct as "casing" to

the 911 dispatcher because "it's just not normal activity for someone to be walking from house to house to see if it's occupied or not" or to try to open the doors of various cars parked in the driveways.

A "fundamental theory" in the context of both burglary and breaking or entering is that absent "evidence of other intent or explanation for breaking and entering . . . the usual object or purpose of burglarizing a dwelling house at night is theft." *State v. Hedrick*, 289 N.C. 232, 236, 221 S.E.2d 350, 353 (1976) (citation and quotation marks omitted); *see State v. McBryde*, 97 N.C. 393, 396, 1 S.E. 925, 927 (1887) ("The intelligent mind will take cognizance of the fact that people do not usually enter the dwelling of others in the night-time, when the inmates are asleep, with innocent intent.  The most usual intent is to steal, and, when there is no explanation or evidence of a different intent, the ordinary mind will infer this also.").

Although — as discussed above — the State failed to prove that either Defendant actually entered the home, we do not believe that this in any way detracts from the sufficiency of the evidence regarding Defendants' intent to commit a felony within the residence.  Because a reasonable juror could infer from Defendants' conduct that they broke the back bedroom window

with the intent to commit the felony of larceny once inside, we hold that there was substantial evidence of felonious intent and that the entry of judgment on felonious breaking or entering is appropriate. As such, we remand to the trial court "for the pronouncement of a judgment as upon a verdict of guilty of felonious breaking or entering." *Watkins*, ___ N.C. App. at ___, 720 S.E.2d at 850 (citation, quotation marks, and brackets omitted).[1]

## II. Jury Instructions

In its charge to the jury, the trial court gave instructions regarding second-degree burglary, felonious breaking or entering, and misdemeanor breaking or entering. The

---

[1] In addition to challenging his conviction for second-degree burglary, Defendant Richard also argues that the trial court erred in denying his motion to dismiss the charge of conspiracy to commit second-degree burglary based on the insufficiency of the evidence regarding entry and intent to commit a felony. However, he offers no argument that the State failed to prove that there was an agreement or understanding between him and Lucas to commit second-degree burglary. *See State v. Dalton*, 122 N.C. 666, 672, 471 S.E.2d 657, 661 (1996) ("A criminal conspiracy is an agreement between two or more people to commit a substantive offense."); *State v. Rozier*, 69 N.C. App. 38, 52, 316 S.E.2d 893, 902 ("It is well established that the gist of the crime of conspiracy is the agreement itself, not the commission of the substantive crime."), *cert. denied*, 312 N.C. 88, 321 S.E.2d 907 (1984). Because he does not challenge the sufficiency of the evidence of such an agreement between him and Lucas and because completion of the substantive offense is not necessary for a conviction of conspiracy to commit second-degree burglary, Defendant Richard's argument on this issue is overruled.

trial court did not instruct the jury on the offense of first-degree trespass, and Defendants contend that the failure to give such an instruction constituted error. Defendants also assert that the trial court erred by failing to expressly define the crime of larceny when it instructed the jury that second-degree burglary is the breaking and entering into an unoccupied dwelling house without the consent of the owners during the nighttime with the intent "to commit a felony or larceny therein." Defendants acknowledge that they did not object to the trial court's instructions and are, therefore, limited to plain error review on appeal. Under plain error review, Defendants bear the burden of showing that "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 517, 723 S.E.2d 326, 333 (2012) (citation and quotation marks omitted).

**A. Failure to Instruct on First-Degree Trespass**

First-degree trespass is a lesser-included offense of felonious breaking or entering. *State v. Owens*, 205 N.C. App. 260, 266, 695 S.E.2d 823, 828 (2010). Unlike felonious breaking or entering, first-degree trespass does not include the element of felonious intent but rather merely requires evidence that the

defendant entered or remained on the premises or in a building of another without authorization.  N.C. Gen. Stat. § 14-159.12 (2013).

A trial court "must submit a lesser-included offense to the jury when, and only when, there is evidence from which the jury can find that the defendant committed the lesser-included offense." *State v. Liggons*, 194 N.C. App. 734, 742, 670 S.E.2d 333, 339 (2009) (citation, quotation marks, and brackets omitted).  "The trial court is not . . . obligated to give a lesser included instruction if there is no evidence giving rise to a reasonable inference to dispute the State's contention." *State v. Hamilton*, 132 N.C. App. 316, 321, 512 S.E.2d 80, 84 (1999).  In *Hamilton*, this Court concluded that the trial court was not required to submit the lesser-included offense of first-degree trespass to the jury in the defendant's trial for felonious breaking or entering because the defendant "did not testify or present any evidence that he broke or entered for any non-felonious purpose."  *Id.* at 321, 512 S.E.2d at 85.

As in *Hamilton*, the evidence in the present case does not permit a reasonable inference that would dispute the State's contention that Defendants intended to commit a felony.  There was no evidence presented that supported an alternative

explanation for Defendants' presence at the Merediths' home. Thus, in the absence of any evidence disputing the State's theory that Defendants "cased" the neighborhood and shattered the Merediths' window in the hope of stealing from the home, Defendants have not demonstrated that the trial court's failure to instruct the jury regarding first-degree trespass was error — much less plain error.

**B. Failure to Define Larceny**

Citing *State v. Foust*, 40 N.C. App. 71, 251 S.E.2d 893 (1979), Defendants contend that the trial court committed plain error by failing to define larceny to the jury given that the State's case identified larceny as the specific felony that Defendants intended to commit. In *State v. Simpson*, 299 N.C. 377, 261 S.E.2d 661 (1980), however, our Supreme Court held that this Court's ruling in *Foust* — that the trial court's failure to define larceny in a burglary prosecution premised on intent to commit larceny was prejudicial and required a new trial — was "too broad" and that "[t]he extent of the definition [of larceny] required depends upon the evidence in the particular case." *Id.* at 384, 261 S.E.2d at 665.

In this case, the evidence established that in the early morning hours of 27 November 2011, Defendants were "casing"

houses and attempting to gain entry into vehicles in various driveways. Defendants' behavior, as witnessed by Mr. Pavel, indicated that they were examining the homes and vehicles so that they could steal property from them. No evidence was offered to suggest that Defendants' conduct was motivated by some other purpose or plan or that Defendants were looking for property to which they had some bona fide claim of right. *See id.* at 384, 261 S.E.2d at 665 ("In the case before us, there was no necessity for any definition or explanation of the word 'larceny' because there was no evidence suggesting that the [stolen property] was borrowed, or taken for some temporary purpose, or otherwise negating a taking with felonious intent to steal."). Thus, because there was evidence presented at trial permitting the inference that Defendants intended to steal property and there was no evidence suggesting that Defendants intended to merely borrow the property, we are satisfied that "the jury did not need a formal definition of the term 'larceny' to understand its meaning and to apply that meaning to the evidence." *Id.* (concluding that term "larceny" may be used as shorthand statement of its definition, i.e., to steal or to take and carry away goods of another with intent to permanently deprive owner of those goods where there is no "direct issue as

to the intent or purpose of the taking" (citation and quotation marks omitted)).

As such, we conclude that "[t]he use of the word 'larceny' as it is commonly used and understood by the general public was sufficient in this case to define for the jury the requisite felonious intent needed to support a conviction" and that "[t]here is no reasonable possibility that [the] failure to define 'larceny' contributed to defendant's conviction or that a different result would have likely ensued had the word been defined." *Id.* Consequently, Defendants have failed to meet their burden of establishing plain error.

## III. Restitution

Defendants next contend that the trial court erred in ordering them to pay restitution in the amount of $575.00 without sufficient evidence to support the award. It is well established that "[t]he amount of restitution ordered by the trial court must be supported by competent evidence presented at trial or sentencing." *State v. Mauer*, 202 N.C. App. 546, 551, 688 S.E.2d 774, 777 (2010). On appeal, this Court reviews *de novo* whether the restitution ordered by the trial court is supported by competent evidence. *State v. McNeil*, 209 N.C. App. 654, 667, 707 S.E.2d 674, 684 (2011).

The State concedes error on this issue, acknowledging that there was no evidence presented regarding the monetary value of the property damage caused by Defendants. Restitution "is not intended to punish defendants but to compensate victims," and the amount ordered must be based on "something more than a guess or conjecture." *State v. Daye*, 78 N.C. App. 753, 758, 338 S.E.2d 557, 561, *aff'd per curiam*, 318 N.C. 502, 349 S.E.2d 576 (1986). Accordingly, we vacate the trial court's restitution orders and remand for a rehearing on this issue. *See Mauer*, 202 N.C. App. at 552, 688 S.E.2d at 778 (vacating restitution order and remanding for rehearing where no evidence was introduced at trial or sentencing to support amount of restitution ordered).

## IV. Ineffective Assistance of Counsel

Finally, Defendants claim that their defense counsel's failure to request a jury instruction defining larceny and an instruction on first-degree trespass constitutes ineffective assistance of counsel. We disagree.

"A successful ineffective assistance of counsel claim based on a failure to request a jury instruction requires the defendant to prove that without the requested jury instruction there was plain error in the charge." *State v. Pratt*, 161 N.C. App. 161, 165, 587 S.E.2d 437, 440 (2003). Here, we have

already determined that the trial court did not commit plain error in its instructions to the jury because (1) the trial court was not required to expressly define larceny under the facts of this case; and (2) Defendants were not entitled to an instruction regarding first-degree trespass. Accordingly, we cannot conclude that their trial counsel's failure to request these instructions constituted ineffective assistance of counsel. *See State v. Land*, ___ N.C. App. ___, ___, 733 S.E.2d 588, 595 (2012) (holding that "[s]ince the trial court did not commit plain error when failing to give the instructions at issue, defendant cannot establish the necessary prejudice required to show ineffective assistance of counsel for failure to request the instructions"), *aff'd per curiam*, 366 N.C. 550, 742 S.E.2d 803 (2013).

**Conclusion**

For the reasons stated above, we conclude that Defendants' second-degree burglary convictions and the trial court's restitution orders must be vacated. We remand to the trial court for entry of judgment and resentencing as to each Defendant on the charges of felonious breaking or entering and for rehearing on the issue of restitution.[2]

---

[2] We also note that the judgments entered by the trial court

NO ERROR IN PART; VACATED AND REMANDED IN PART.

Judges STEELMAN and STEPHENS concur.

---

mistakenly list Defendants' conspiracy offenses as conspiracy to commit breaking or entering of a building rather than conspiracy to commit second-degree burglary.  While the judgments reflect the correct class of felony for conspiracy to commit second-degree burglary (Class H), the trial court should amend the offense descriptions upon remand so that the record may "speak the truth."  *State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) (citation and quotation marks omitted).