STEELMAN, Judge.
*612 Where there was no evidence that defendant had a non-criminal intent on either of the two occasions that he attempted to break into a dwelling, the trial court could properly infer that he had the intent to commit larceny, as set forth in State v. McBryde, 97 N.C. 393, 1 S.E. 925 (1887). The trial court did not err by denying defendant's motion to dismiss the charges against him for insufficient evidence.
I. Factual and Procedural Background
On 12 December 2011 Donald Wayne Mims (defendant) was indicted for the attempted first degree burglary of a duplex located in Raleigh, on 11 October 2011, and for possession of a stolen bicycle on the same date. On 13 December 2011 defendant was indicted for having attained the status of an habitual felon. On 6 February 2012 defendant was indicted for the 27 September 2011 attempted felonious breaking and entering at the same duplex. The charges against defendant came on for trial *613 before a jury at the 26 March 2013 criminal session of Superior Court for Wake County.
Maria Flores (Flores) and Mr. Amet Gonzales (Gonzales) testified for the State. In September and October of 2011, Flores lived in the duplex with her husband, children, and Gonzales, who rented a room at the back of the unit. On 27 September 2011 Gonzales returned from work at around 2:00 p.m. and lay down to take a nap. Between 2:00 and 3:00 p.m., he heard a knock at the back door. He thought it might be Flores, and opened the door of his room, which opened onto a fenced back yard. He saw an unknown African-American man in the yard, and shouted "Police!" The man jumped over the back fence and ran away. Gonzales noticed that the screen on the back window, which was previously secured to the window frame, was now lying in the yard. Raleigh Police Officer Jose Delasierra was dispatched to the duplex in response to Gonzales's phone call to 911, and confirmed that the screen was lying on the ground. At a later date Raleigh Detective Isaac Perez administered a photo lineup to Gonzales. When Gonzales was shown defendant's picture, he "immediately identified" the photo as the person he had seen on 27 September 2011. Detective Perez asked Gonzales to rate the certainty of his identification on a scale of one to ten, and he characterized it as an "eight."
About 4:00 a.m. on 11 October 2011, Flores heard a knock at the front door. A few minutes later she heard the sound of someone tampering with the lock, and saw the door knob moving inside the house. She looked out a window and saw an African-American man leaving on a bicycle. Flores called 911 and after the police arrived, she went outside and saw that the door knob was loose and that the door frame, which had been intact, was damaged.
In the fall of 2011, Richard Jones (Jones) lived next door to Flores. He worked at a warehouse from 4:00 a.m. until 2:00 p.m., and on 11 October 2011 he got up at 3:00 a.m. to get ready for work. When he walked outside at around 3:30 a.m., Jones saw an unknown person on Flores's porch "messing with" the door knob. Jones described the man as a clean shaven black male who was carrying a backpack. When the man looked up and saw Jones, he inquired whether he could ask Jones a few questions, but Jones said "No, you need to keep it moving." While Jones watched, the man went to several other houses on the street and fiddled with the door knobs, before entering another dwelling. Jones called 911 and showed the police the house that the man had entered. As officers approached the house, the man rode off on a *352 bicycle which Jones testified belonged to a neighbor. *614 Officer Adam White was dispatched to the Flores duplex on 11 October 2011, where he spoke with Jones, who indicated that the man was at a dwelling down the street from Flores. Officer White saw the man attempting to ride away on a bicycle, and ordered him to stop. Defendant complied and gave Officer White permission to search his person and a backpack that he was carrying. Inside the backpack, Officer White found a watch, sunglasses, a shirt, and a video game. Officer White took defendant into custody. At the close of the State's evidence, the State announced that it would not proceed on the charge of possession of stolen property because the owner of the bicycle was not available.
Defendant did not present evidence. On 27 March 2013 the jury returned verdicts finding defendant guilty of attempted first degree burglary and attempted felonious breaking or entering. Defendant pled guilty to his status as an habitual felon. The trial court determined that defendant was a prior record level of VI for purposes of sentencing. The trial court found the existence of the mitigating factor that defendant suffered from "a mental condition that was insufficient to constitute a defense but significantly reduced [his] culpability for the offense." The trial court imposed a consolidated, mitigated range, sentence of 100 to 129 months imprisonment.
Defendant did not give notice of appeal, but subsequently petitioned for a writ of certiorari. On 10 December 2013 this Court granted defendant's petition for writ of certiorari, allowing him to pursue a belated appeal.
II. Legal Analysis
A. Standard of Review
In the sole issue raised on appeal, defendant argues that the trial court erred by denying his motion to dismiss the charges against him for insufficiency of the evidence. "The trial court's denial of a motion to dismiss for insufficient evidence is reviewed de novo. On consideration of a motion to dismiss, the court need only determine whether there is substantial evidence of each essential element of the offense charged and of the defendant's being the perpetrator of the offense." State v. Lee, 213 N.C.App. 392, 398, 713 S.E.2d 174, 179 (2011) (citations omitted). " 'Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion. In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence.... [I]f there is substantial evidence-whether direct, circumstantial, or both-to *615 support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.' " State v. Hunt, 365 N.C. 432, 436, 722 S.E.2d 484, 488 (2012) (quoting State v. Abshire, 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (citations and quotation marks omitted)). "The trial court is 'not required to determine that the evidence excludes every reasonable hypothesis of innocence prior to denying a defendant's motion to dismiss.' Also, contradictions and inconsistencies do not warrant dismissal; the trial court is not to be concerned with the weight of the evidence. Ultimately, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances." State v. Lee, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998) (quoting State v. Franklin, 327 N.C. 162, 172, 393 S.E.2d 781, 787 (1990) ).
B. Attempted First Degree Burglary
"The elements of first-degree burglary are: (i) the breaking (ii) and entering (iii) in the nighttime (iv) into the dwelling house or sleeping apartment (v) of another (vi) which is actually occupied at the time of the offense (vii) with the intent to commit a felony therein." State v. Singletary, 344 N.C. 95, 101, 472 S.E.2d 895, 899 (1996) (citing N.C. Gen.Stat. § 14-51 ). "The elements of attempt are an intent to commit the substantive offense and an overt act which goes beyond mere preparation but falls short of the completed offense." State v. Squires, 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003).
*353 In this case, defendant's argument is limited to whether there was sufficient evidence of his intent to commit larceny. Because defendant does not challenge the sufficiency of the evidence of any other element of the offense, we limit our review to this issue. See State v. Davis, 198 N.C.App. 146, 151, 678 S.E.2d 709, 713-14 (2009).
This issue is controlled by the case of State v. McBryde, 97 N.C. 393, 1 S.E. 925 (1887), and subsequent cases that have interpreted it. In McBryde, the defendant was discovered in the house of another at 2:00 a.m. On appeal, the defendant argued that the State had failed to produce evidence that at the time he entered the house he had the intent to commit larceny. Our Supreme Court held:
The intelligent mind will take cognizance of the fact that people do not usually enter the dwellings of others in the night-time, when the inmates are asleep, with innocent intent. The most usual intent is to steal, and when there is no explanation or evidence of a different intent, the ordinary mind will infer this also. The fact of the entry alone, *616 in the night-time, accompanied by flight when discovered, is some evidence of guilt, and, in the absence of any other proof, or evidence of other intent, and with no explanatory facts or circumstances, may warrant a reasonable inference of guilty intent.
... [O]ur law will not permit juries to draw any inference to the prejudice of a prisoner from the fact that he does not himself go upon the stand as a witness in his own behalf, but there was no explanatory fact or circumstance from any source to show any intent not criminal, and the facts and circumstances proven are sufficient to outweigh the legal presumption of innocence, and put him upon his defense.
McBryde, 97 N.C. at 396-97, 1 S.E. at 927-28. Although McBryde is a case from the 19th Century, it continues to be followed by our appellate courts. For example, in State v. Lucas, --- N.C.App. ----, 758 S.E.2d 672 (2014), this Court held, citing McBryde, that a " 'fundamental theory' in the context of both burglary and breaking or entering is that absent 'evidence of other intent or explanation for breaking and entering ... the usual object or purpose of burglarizing a dwelling house at night is theft.' " Lucas, ---N.C.App. at ----, 758 S.E.2d at 678 (quoting State v. Hedrick, 289 N.C. 232, 236, 221 S.E.2d 350, 353 (1976) (citation and quotation marks omitted), and citing McBryde ). In this case, as in McBryde, there was no evidence that defendant's attempt to break into Flores's home was for a purpose other than to commit larceny, and we hold that the trial court did not err by denying defendant's motions for dismissal.
In arguing for a contrary result, defendant directs our attention to evidence that (1) defendant asked Jones if he could ask him some questions; (2) when Jones told defendant to "keep moving" he "did not flee" but went to the doors of several other houses on the street and tried their door knobs; (3) when the police arrived, defendant rode away on a bicycle; however, when Officer White ordered defendant to stop, he complied, and gave permission for Officer White to search his person and backpack; and (4) the State did not present evidence that items in defendant's backpack were stolen. Defendant speculates that this evidence "raises the inference that his purpose was to seek some kind of assistance, that he was looking for something or somebody, a purpose other than an intent to commit larceny which precludes application of the McBryde inference." We disagree.
*617 First, defendant fails to articulate a logical connection between the cited evidence and an inference that defendant needed "some kind of assistance" or was searching for someone. Significantly, when defendant spoke with Jones, he did not indicate in any way that he was lost or needed assistance: he did not say that he was injured or that his car had broken down, or inquire whether a specific person lived on the street. Moreover, defendant does not explain how the evidence that he went from door to door at 4:00 a.m., trying the door knob of each dwelling, would be evidence of a non-criminal purpose, and does not cite any authority in support of this position. We note that in Lucas, we discussed a witness's testimony that characterized the defendants' actions in moving from *354 house to house late at night as " casing the neighborhood." The witness testified that " 'it's just not normal activity for someone to be walking from house to house to see if it's occupied or not.' " Lucas, ---N.C.App. at ----, 758 S.E.2d at 678. We agree, and hold that this behavior was not evidence of a non-criminal purpose.
As to the fact that defendant complied with Officer White's order to stop, and that he was not in possession of stolen goods at the time of his arrest, defendant fails to explain how this evidence tends to show that defendant had a non-criminal reason for attempting to break into Flores's dwelling. This evidence does not preclude application of the McBryde inference.
Defendant also cites several cases in which our appellate courts have held that where there was evidence that the defendant's entry into the dwelling of another was for a purpose other than larceny, the State could not rely on the McBryde presumption to establish the defendant's larcenous intent. However, these cases are easily distinguishable, since in each case there was testimony from witnesses that tended to show a specific non-criminal explanation for the defendant's behavior. In In re Mitchell, 87 N.C.App. 164, 359 S.E.2d 809 (1987), the State offered testimony from the victim of a break-in that the juvenile respondent had told him she entered the house because she was being chased. In State v. Moore, 62 N.C.App. 431, 303 S.E.2d 230 (1983), the defendant testified that he had been forced at knife-point to enter the house.
However, in State v. Simpson, 303 N.C. 439, 449, 279 S.E.2d 542, 548 (1981), our Supreme Court rejected the defendant's argument that there was insufficient evidence of felonious intent:
The only direct evidence of defendant's intent in entering the dwelling is contained in his 12 April 1976 confession to law enforcement officers, in which he stated that after *618 entering the dwelling, he immediately went to sleep on the floor. We note that defendant never claimed that his intent in entering the dwelling was to find a place to sleep; he merely stated that he in fact went to sleep after entering. It is well established that in the absence of proof to the contrary, a reasonable inference of felonious intent may be drawn from the fact that an individual broke and entered the dwelling of another in the night.
(citing State v. Sweezy, 291 N.C. 366, 230 S.E.2d 524 (1976), and McBryde ) (emphasis added). We hold that the instant case is more similar to Simpson in that there was no evidence showing that defendant had a non-felonious intent in attempting to break into Flores's dwelling.
This argument is without merit.
C. Evidence of Attempted Felony Breaking or Entering
Defendant argues next that the trial court erred by denying his motion to dismiss the charge of attempted felonious breaking or entering on 27 September 2011. He contends that there was insufficient evidence either that he had the intent to commit larceny, or of his identity as the person who Gonzales saw in the yard. We disagree.
Defendant concedes that the McBryde inference, discussed above, may be applied to an attempted breaking or entering that occurs during daylight hours. "[T]his Court has previously applied the [McBryde ] inference to breakings and enterings during the daytime." State v. Roberts, 135 N.C.App. 690, 697, 522 S.E.2d 130, 134 (1999), disc. rev. denied, 351 N.C. 367, 543 S.E.2d 142 (2000). Defendant does not challenge the sufficiency of the evidence of defendant's attempted breaking or entering, and does not argue that there was any evidence of a non-felonious purpose. Therefore, in ruling on defendant's motion for dismissal, the trial court could properly consider the evidence in light of McBryde.
As to the evidence of defendant's identity as the perpetrator, defendant argues that Gonzales did not identify him in court, and that he had told Officer Perez that he was only 80% sure that the photo of defendant was the person he had seen in the yard. We note that Gonzales testified that when he was shown the photo lineup he was able to identify the person he had seen on 27 September 2011, and that when he was asked *355 how he recognized the photograph, he testified that "I see him again here when I was standing in front of him at the time." In addition, it is well-established that "a witness's equivocation on the question of identity does not render the testimony incompetent, but goes only to *619 its weight." State v. Pridgen, 313 N.C. 80, 86, 326 S.E.2d 618, 623 (1985) (citations omitted). This argument is without merit.
III. Conclusion
The trial court did not err by denying defendant's motion to dismiss the charges against him.
NO ERROR.
Judges HUNTER, JR. and DAVIS concur.