CALABRIA, Judge.
 

 *270
 
 Darren Wayne Gentle ("defendant") appeals from the trial court's judgment entered upon jury verdicts finding him guilty of first-degree forcible rape, first-degree forcible sexual offense, second-degree kidnapping, and committing a crime against nature. After careful review, we conclude that defendant received a fair trial, free from prejudicial error. Defendant has also filed a petition for writ of certiorari requesting review of the
 
 *836
 
 trial court's order requiring him to enroll in satellite-based monitoring ("SBM") for the remainder of his natural life. However, defendant failed to preserve his constitutional challenge to the SBM order by raising the argument at trial. Accordingly, we deny defendant's petition for writ of certiorari and dismiss his appeal of the issue for lack of jurisdiction.
 

 I. Factual and Procedural Background
 

 In August 2015, Jane Smith ("Smith"),
 
 [1]
 
 age 25, was approximately seven months pregnant and living with her boyfriend at his mother's house in Asheboro, North Carolina. At around 4:00 p.m. on 28 August 2015, Smith had an argument with her boyfriend's mother and left the residence. She walked to a gas station to purchase cigarettes. However, when Smith arrived to the gas station at 5:00 p.m., the clerk refused to sell cigarettes to her because she did not have identification. Smith saw defendant staring at her and asked him to purchase cigarettes for her; he agreed. Defendant invited Smith to purchase crack cocaine, and she did so. Smith and defendant met with a drug dealer, purchased crack cocaine, and then walked to a shed at defendant's parents' house, which contained a bed, chairs, and a television. At the shed, Smith injected crack cocaine, while defendant smoked it and some marijuana. After using the drugs, Smith walked back to the gas station to meet a friend. defendant subsequently returned to the gas station and invited Smith to use more drugs; she agreed. They walked to a parking lot surrounded by a dark, wooded area.
 

 Once they were in the parking lot, defendant approached Smith from behind and threatened her. Smith resisted and attempted to flee, but defendant caught up to her near the stairs of the parking lot. As Smith struggled to protect her stomach, defendant dragged her down the
 
 *271
 
 stairs, forced her into the woods, and removed her clothing. Defendant disrobed and inserted his fingers into Smith's anus and vagina. She told him to stop, but he did not. He then placed his penis in her anus and vagina. Smith did not consent to these acts. Afterwards, defendant repeatedly expressed concern that Smith would contact law enforcement, but she assured him that she would not, due to outstanding warrants for her arrest. Instead, she asked if they could return to defendant's shed. Defendant led Smith back to the shed, where they both fell asleep.
 

 When Smith awoke, defendant prevented her from leaving. She told defendant that she needed to get to a hospital to receive treatment for the scrapes she incurred during the struggle. She changed clothes, and defendant allowed her to leave the shed. He invited her back into the woods, but she declined. Smith saw a neighbor, and as she approached him, defendant fled into the woods. Smith asked the neighbor for something to drink and contacted her father. Smith's father arrived and took her to the hospital.
 

 At the hospital, Smith informed medical staff that she had been raped. She denied having used drugs. Smith also spoke with a detective, who photographed her injuries. The next day, she turned herself in for her outstanding warrants.
 

 On 14 March 2016, defendant was indicted for first-degree rape, kidnapping, crime against nature, and first-degree sexual offense. Trial commenced on 4 October 2016 in Randolph County Superior Court. Defendant did not present evidence but moved to dismiss all charges at the close of the State's evidence and at the close of all the evidence. The trial court denied both motions.
 

 On 6 October 2016, the jury returned verdicts finding defendant guilty of first-degree rape, second-degree kidnapping, crime against nature, and first-degree sexual offense. The trial court arrested judgment on the kidnapping charge. The trial court then consolidated judgments on the remaining charges, and sentenced defendant to a minimum of 365 months and a maximum of 498 months in the custody of the North Carolina Division of Adult Correction. The court further ordered that defendant register as a sex offender and, upon his release from prison, be enrolled in SBM for the remainder of his natural life.
 

 Defendant appeals.
 

 *837
 

 II. Jury Instruction
 

 In his first argument, defendant contends that the trial court erred by instructing the jury that it could find that the victim suffered a "serious
 
 *272
 
 personal injury" in the form of a mental injury, because the State presented no evidence to support such instruction. Because he failed to object to the allegedly erroneous instruction at trial, defendant requests plain error review of this issue.
 

 A. Standard of Review
 

 "In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4). The plain error standard of review applies "to unpreserved instructional or evidentiary error. For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty."
 

 Id.
 

 (citation and internal quotation marks omitted). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]"
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) (citation and quotation marks omitted).
 

 B. Analysis
 

 For several decades, our appellate courts consistently held "that it was
 
 per se
 
 plain error for a trial court to instruct the jury on a theory of the defendant's guilt that was not supported by the evidence."
 
 State v. Robinson
 
 , --- N.C. App. ----, ----,
 
 805 S.E.2d 309
 
 , 318 (2017) (citation omitted). However, in
 
 State v. Boyd
 
 ,
 
 366 N.C. 548
 
 ,
 
 742 S.E.2d 798
 
 (2013) (per curiam), our Supreme Court adopted a dissent from this Court which advocated a "shift away from the
 
 per se
 
 rule ... that a reviewing court 'must assume' that the jury relied on the improper theory."
 
 State v. Martinez
 
 , --- N.C. App. ----, ----,
 
 801 S.E.2d 356
 
 , 361 (2017) (citation omitted);
 
 see also
 

 State v. Boyd
 
 ,
 
 366 N.C. 548
 
 ,
 
 742 S.E.2d 798
 
 (2013) (reversing per curiam for the reasons stated in
 
 State v. Boyd
 
 ,
 
 222 N.C. App. 160
 
 ,
 
 730 S.E.2d 193
 
 (2012) (Stroud, J., dissenting) ). "Rather, under
 
 Boyd
 
 , a reviewing court is to determine whether a disjunctive jury instruction constituted reversible error, without being required in every case to assume that the jury relied on the inappropriate theory."
 
 Martinez
 
 , --- N.C. App. at ----,
 
 801 S.E.2d at 361
 
 (concluding that the defendant "failed to meet his burden of showing that the trial court's inclusion of 'analingus' in the jury instruction had any
 
 probable
 
 impact on the jury's
 
 *273
 
 verdict[,]" because the victim "was clear in her testimony regarding the occasions where fellatio and anal intercourse had occurred").
 

 In North Carolina, the offenses of forcible rape and forcible sexual offense may be elevated to the first degree when the offender "[i]nflicts serious personal injury upon the victim ...."
 
 N.C. Gen. Stat. § 14-27.21
 
 (a)(2) (2017) ;
 

 id.
 

 § 14-27.26(a)(2). The State may offer evidence of bodily or mental injuries to prove that the victim suffered a "serious personal injury."
 
 State v. Boone
 
 ,
 
 307 N.C. 198
 
 , 204,
 
 297 S.E.2d 585
 
 , 589 (1982),
 
 overruled on other grounds by
 

 State v. Richmond,
 

 347 N.C. 412
 
 ,
 
 495 S.E.2d 677
 
 ,
 
 cert. denied,
 

 525 U.S. 843
 
 ,
 
 119 S.Ct. 110
 
 ,
 
 142 L.Ed.2d 88
 
 (1998). "In determining whether serious personal injury has been inflicted, the court must consider the particular facts of each case."
 
 State v. Herring
 
 ,
 
 322 N.C. 733
 
 , 739,
 
 370 S.E.2d 363
 
 , 367 (1988). The element may be established through evidence of
 

 a series of incidents forming one continuous transaction between the rape or sexual offense and the infliction of the serious personal injury. Such incidents include injury inflicted on the victim to overcome resistance or to obtain submission, injury inflicted upon the victim or another in an attempt to commit the crimes or in furtherance of the crimes of rape or sexual offense, or injury inflicted upon the victim or another for the purpose of concealing
 
 *838
 
 the crimes or to aid in the assailant's escape.
 

 Id.
 

 (citation omitted).
 

 In order to prove a serious personal injury based on mental or emotional harm, the State must show that (1) the defendant caused the harm; (2) the harm extended for some appreciable period of time beyond the incidents surrounding the crime; and (3) the harm was more than the
 
 res gestae
 
 results that are inherent to every forcible rape or sexual offense.
 
 State v. Finney
 
 ,
 
 358 N.C. 79
 
 , 90,
 
 591 S.E.2d 863
 
 , 869 (2004). "
 
 Res gestae
 
 results are those so closely connected to an occurrence or event in both time and substance as to be a part of the happening."
 

 Id.
 

 (citation, quotation marks, and brackets omitted).
 

 In the instant case, the State presented substantial evidence that defendant inflicted bodily harm upon Smith as he attempted to overcome her resistance.
 
 See
 

 Herring,
 

 322 N.C. at 739
 
 ,
 
 370 S.E.2d at 367
 
 . Although she attempted to fight, Smith was approximately seven months pregnant, and she struggled to protect her stomach while defendant forcibly dragged her down 33 concrete stairs and into the nearby woods. Smith sustained extensive bruises and abrasions to most of the
 
 *274
 
 left side of her body, including her leg, abdomen, back, side, arm, and shoulder. Although some of her wounds were superficial, others were "much, much deeper" abrasions that stripped off the first layer of skin and exposed the dermis. At trial, Jennifer Whitley, the Sexual Assault Nurse Examiner who treated Smith at the hospital, compared her injuries to the "road rash" that a person might suffer after falling off a motorcycle traveling at 55 miles per hour. Smith testified that her injuries were very painful, and she still bore extensive scars at trial.
 

 On appeal, defendant asserts that the trial court's erroneous mental injury instruction probably impacted the jury's verdicts, because the evidence supporting the seriousness of Smith's
 
 bodily
 
 injuries was "equivocal." For support, defendant cites the following testimony:
 

 [THE STATE:] Let me ask you this. How were you treated at the hospital? What did they do for your injuries?
 

 [SMITH:] There wasn't much-they gave me antibiotics for the scrapes, bandaged up my legs, but there wasn't more they could do.
 

 Q. No broke bones, internal injuries, nothing like that?
 
 Nothing serious?
 

 A. No.
 

 (Emphasis added).
 

 The trial court, however, rejected this very same argument in denying defendant's motion to dismiss the charges of first-degree forcible rape and sexual offense. Once the trial court determined that the State presented sufficient evidence to withstand defendant's motion to dismiss, it was for the jury, as finders of fact, to determine whether Smith sustained a serious personal injury. The trial court instructed the jury that second-degree rape and sexual offense differ from the first-degree offenses "only in that it is not necessary for the State to prove beyond a reasonable doubt that the defendant inflicted serious personal injury upon the alleged victim." During deliberations, the jury requested to review pictures of Smith's "personal injuries down her left side." After the jury found defendant guilty of both offenses in the first degree, defense counsel requested that the jury be individually polled on the charge of first-degree rape. The jurors unanimously affirmed their verdict.
 

 Consequently, even assuming,
 
 arguendo
 
 , that there was no evidence to support the trial court's instruction on mental injury, defendant failed to meet his burden of showing that the alleged error
 
 *275
 
 had any probable impact on the jury's verdict.
 
 Martinez
 
 , --- N.C. App. at ----,
 
 801 S.E.2d at 361
 
 . This argument is overruled.
 

 III. Motion to Dismiss
 

 Defendant next argues that the trial court erred by denying his motion to dismiss the crime against nature charge, because the State failed to offer substantial evidence that the offense was committed in a "public place." We disagree.
 

 *839
 

 A. Standard of Review
 

 In reviewing a criminal defendant's motion to dismiss, the question for the trial court "is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (citation omitted),
 
 cert. denied
 
 ,
 
 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). "[T]he trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied
 
 ,
 
 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995). We review the trial court's denial of a criminal defendant's motion to dismiss
 
 de novo
 
 .
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007).
 

 B. Analysis
 

 Pursuant to
 
 N.C. Gen. Stat. § 14-177
 
 (2017), "[i]f any person shall commit the crime against nature, with mankind or beast, he shall be punished as a Class I felon." "[P]enetration by or of a sexual organ is an essential element" of the crime against nature.
 
 State v. Stiller
 
 ,
 
 162 N.C. App. 138
 
 , 140,
 
 590 S.E.2d 305
 
 , 307 (citation and quotation marks omitted),
 
 appeal dismissed and disc. review denied
 
 ,
 
 358 N.C. 240
 
 ,
 
 596 S.E.2d 19
 
 (2004). "[T]he offense is broad enough to include all forms of oral and anal sex, as well as unnatural acts with animals."
 

 Id.
 

 N.C. Gen. Stat. § 14-177
 
 "punish[es] persons who undertake by unnatural and indecent methods to gratify a perverted and depraved sexual instinct which is an offense against public decency and morality."
 
 State v. Hunt
 
 ,
 
 365 N.C. 432
 
 , 440,
 
 722 S.E.2d 484
 
 , 490 (2012) (citation and quotation marks omitted). The statute "is unconstitutional when used
 
 *276
 
 to criminalize acts within private relations protected by the Fourteenth Amendment liberty interest."
 
 State v. Whiteley
 
 ,
 
 172 N.C. App. 772
 
 , 779,
 
 616 S.E.2d 576
 
 , 581 (2005) (citing
 
 Lawrence v. Texas
 
 ,
 
 539 U.S. 558
 
 ,
 
 123 S.Ct. 2472
 
 ,
 
 156 L.Ed.2d 508
 
 (2003) ). However,
 
 N.C. Gen. Stat. § 14-177
 
 is facially constitutional and "may properly be used to prosecute conduct in which a minor is involved, conduct involving non-consensual or coercive sexual acts, conduct occurring in a public place, or conduct involving prostitution or solicitation[.]"
 

 Id.
 

 In the instant case, the trial court instructed the jury on the "public place" theory of the crime against nature. In this context, "[a] place is public if it is open or available for all to use, share, or enjoy."
 
 In re R.L.C.
 
 ,
 
 179 N.C. App. 311
 
 , 318,
 
 635 S.E.2d 1
 
 , 5 (2006) (citation and quotation marks omitted),
 
 aff'd on other grounds
 
 ,
 
 361 N.C. 287
 
 ,
 
 643 S.E.2d 920
 
 ,
 
 cert. denied
 
 ,
 
 552 U.S. 1024
 
 ,
 
 128 S.Ct. 615
 
 ,
 
 169 L.Ed.2d 396
 
 (2007). "A parking lot is available for all to use and is thus a public place."
 

 Id.
 

 On appeal, defendant contends that the State failed to prove that the offense occurred in a "public place" because "the events described by [Smith] occurred well outside the public view in an area ... described as 'dark' and 'wooded.' " We disagree.
 

 It is a violation of
 
 N.C. Gen. Stat. § 14-177
 
 to engage in sexual acts in a public place; there is no requirement that the prohibited conduct occur
 
 in public view
 
 .
 
 See
 
 id.
 

 (explaining that "whether anyone saw respondent engaged in sexual behavior in a parked car in a public parking lot is immaterial to whether he engaged in the activity in a public place"). Similarly, Smith's description of the "dark" and "wooded" area does not foreclose its status as a public place. Indeed, Smith consistently testified that the offenses occurred at the bottom of the stairs in the parking lot:
 

 [THE STATE:] ... Did you say anything or scream anything while you were being pulled down the steps?
 

 [SMITH:] I was telling him to stop. I was screaming stop.
 

 Q. Did he stop?
 

 *840
 
 A. No.
 

 Q. Okay. When you got to the bottom of the steps, what happened then?
 

 A. He got on top of me. He started pulling his clothes off, his shorts and his underwear off. He pulled my shorts off, pulled my underwear off, and began to finger me.
 

 *277
 
 ...
 

 [THE STATE:] Okay. Just so we're clear, where this happened, how far did he drag you into the woods?
 

 [SMITH:] Well we weren't even probably like 10, 5 feet from the stairs.
 

 ...
 

 [THE STATE:] Okay. Did you ask him to take you anywhere, at some point?
 

 [SMITH:] I-yeah. I did ask to go back to his shed. That was an attempt to hopefully get him to walk me back through the roads so I could try and get some help from someone.
 

 Q. Okay. Now, this happened at the bottom of the stairway, correct?
 

 A. Yes.
 

 Q. Okay. After he did this to you, did ya'll go back up the stairs? Where did ya'll go?
 

 A. No. We went through the woods? [sic]
 

 Q. Did you know where you were?
 

 A. No.
 

 Q. Were you familiar with those woods?
 

 A. No.
 

 Q. Okay. At what point, after walking in the woods with him, did you ask him if you could go back to the shed with him?
 

 A. This was when we were still at the bottom of the stairs, before we ever started walking anywhere.
 

 Investigating officers subsequently discovered Smith's shorts, underwear, and a flip-flop in the woods approximately 30 feet away from the bottom of the parking lot stairs.
 

 Taken in the light most favorable to the State, this is sufficient evidence from which a reasonable juror could conclude that defendant unlawfully engaged in sexual acts in a public place. Therefore, the trial
 
 *278
 
 court did not err by denying defendant's motion to dismiss the crime against nature charge.
 

 IV. Satellite-Based Monitoring
 

 In his last argument, defendant requests that we grant his petition for writ of certiorari to review the trial court's order requiring him to enroll in SBM for the remainder of his natural life. Defendant argues that the trial court erred by ordering him to submit to SBM without first making a reasonableness determination as required by
 
 Grady v. North Carolina
 
 , 575 U.S. ----,
 
 135 S.Ct. 1368
 
 ,
 
 191 L.Ed.2d 459
 
 (2015) (per curiam). However, defendant concedes that he failed to make this constitutional argument to the trial court, and that his appeal from the SBM order is untimely. Accordingly, defendant implicitly "asks this Court to take
 
 two
 
 extraordinary steps to reach the merits, first by issuing a writ of certiorari to hear th[e] appeal, and then by invoking Rule 2 of the North Carolina Rules of Appellate Procedure to address his unpreserved constitutional argument."
 
 State v. Bishop
 
 , --- N.C. App. ----, ----,
 
 805 S.E.2d 367
 
 , 369 (2017),
 
 disc. review denied
 
 ,
 
 370 N.C. 695
 
 ,
 
 811 S.E.2d 159
 
 (2018). We decline to do so.
 

 As we explained in
 
 Bishop
 
 , "[a] writ of certiorari is not intended as a substitute for a notice of appeal. If this Court routinely allowed a writ of certiorari in every case in which the appellant failed to properly appeal, it would render meaningless the rules governing the time and manner of noticing appeals."
 

 Id.
 

 Rather, "a petition for the writ must show merit or that error was probably committed below."
 

 Id.
 

 (quoting
 
 State v. Grundler
 
 ,
 
 251 N.C. 177
 
 , 189,
 
 111 S.E.2d 1
 
 , 9 (1959) ).
 

 As in
 
 Bishop
 
 , defendant's Fourth Amendment argument "is procedurally barred because he failed to raise it in the trial court."
 

 Id.
 

 Like the
 
 Bishop
 
 defendant, he had the benefit of our Court's decisions in
 
 State v. Morris
 
 ,
 
 246 N.C. App. 349
 
 ,
 
 783 S.E.2d 528
 
 (2016) and
 
 State v. Blue
 
 ,
 
 246 N.C. App. 259
 
 ,
 
 783 S.E.2d 524
 
 (2016), which "outlined the procedure defendants must follow to preserve a Fourth Amendment challenge to satellite-based monitoring in the trial court."
 

 Id.
 

 Therefore, "the law governing preservation of this issue was settled at the time [defendant] appeared before the trial court."
 

 Id.
 

 Since defendant "is no different from other
 
 *841
 
 defendants who failed to preserve their constitutional arguments in the trial court, and because he has not argued any specific facts that demonstrate manifest injustice if we decline to invoke Rule 2," we deny defendant's petition for writ of certiorari and dismiss his appeal of this issue.
 

 Id.
 

 at ----, 805 S.E.2d at 370.
 
 *279
 

 V. Conclusion
 

 Even assuming,
 
 arguendo
 
 , that the trial court erroneously instructed the jury that it could find that Smith suffered a serious personal injury based on mental harm, defendant failed to prove that such error probably impacted the jury's verdicts finding him guilty of first-degree forcible rape and forcible sexual offense. The trial court did not err by denying defendant's motion to dismiss the crime against nature charge, because the State presented substantial evidence that the offense occurred in a "public place." In our discretion, we deny defendant's petition for writ of certiorari and dismiss his untimely appeal of the trial court's SBM order.
 

 NO ERROR IN PART; DISMISSED IN PART.
 

 Judge ZACHARY concurs.
 

 Judge ARROWOOD concurs in part and dissents in part by separate opinion.
 

 ARROWOOD, Judge, concurring in part, dissenting in part.
 

 I agree with the majority opinion that defendant failed to show that any alleged error with respect to the mental injury instruction had a probable impact on the jury's verdict, and that the trial court did not err by denying defendant's motion to dismiss the charge of committing a crime against nature. With respect to the third issue, given that the State has conceded error, I respectfully dissent. Unlike the majority, I would issue a writ of certiorari to hear defendant's third argument on appeal, and then invoke Rule 2 of the North Carolina Rules of Appellate Procedure to address the merits of the argument.
 

 Our Court has discretion to allow a petition for a writ of certiorari to review judgments and orders below when, as here, "the right to prosecute an appeal has been lost by failure to take timely action." N.C.R. App. P. 21(a)(1) (2018). Such relief "is not intended as a substitute for a notice of appeal."
 
 State v. Bishop
 
 , --- N.C. App. ----, ----,
 
 805 S.E.2d 367
 
 , 369 (2017),
 
 disc. review denied
 
 ,
 
 370 N.C. 695
 
 ,
 
 811 S.E.2d 159
 
 (2018). Thus, our Court must only allow writs of certiorari that "show merit or that error was probably committed below."
 

 Id.
 

 (citation omitted).
 

 Under Rule 2, "[t]o prevent manifest injustice to a party[ ] ... either court of the appellate division may[ ] ... suspend or vary the requirements or provisions of any of [the North Carolina Rules of Appellate
 
 *280
 
 Procedure] in a case pending before it upon application of a party or upon its own initiative[.]" N.C.R. App. P. 2 (2018). Our Court only invokes Rule 2 in exceptional circumstances to address "significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and only in such instances."
 
 State v. Campbell
 
 ,
 
 369 N.C. 599
 
 , 603,
 
 799 S.E.2d 600
 
 , 602 (2017) (emphasis, citations, and quotation marks omitted). A determination as to "whether a particular case is one of the rare 'instances' appropriate for Rule 2 review-must necessarily be made in light of the specific circumstances of individual cases and parties, such as whether 'substantial rights of an appellant are affected.' "
 

 Id.
 

 (quoting
 
 State v. Hart
 
 ,
 
 361 N.C. 309
 
 , 316,
 
 644 S.E.2d 201
 
 , 205 (2007) ). Invoking Rule 2 is a case-specific decision that "rests in the discretion of the panel assigned to hear the case and is not constrained by precedent."
 
 State v. Bursell
 
 , --- N.C. App. ----, ----,
 
 813 S.E.2d 463
 
 , 467 (2018) (citation omitted).
 

 Defendant argues the trial court erred by ordering defendant to submit to the satellite-based monitoring ("SBM") program without first determining whether the order was reasonable. As the majority explains, defendant failed to appeal the SBM order, and did not object at trial to preserve the issue for appeal; therefore, a writ of certiorari must be granted and Rule 2 must be invoked before our Court can address this argument.
 

 In
 
 Grady v. North Carolina
 
 , 575 U.S. ----,
 
 135 S.Ct. 1368
 
 ,
 
 191 L.Ed.2d 459
 
 (2015) (per curiam), the Supreme Court of the United
 
 *842
 
 States held that North Carolina's SBM program effectuates a continuous warrantless search, subject to the Fourth Amendment.
 

 Id.
 

 at ----,
 
 135 S.Ct. at 1370-71
 
 ,
 
 191 L.Ed.2d at 462
 
 . Accordingly, before ordering a defendant to enroll in the SBM program, a trial court must "determine, based on the totality of the circumstances, if the SBM program is reasonable when properly viewed as a search."
 
 State v. Blue
 
 ,
 
 246 N.C. App. 259
 
 , 265,
 
 783 S.E.2d 524
 
 , 527 (2016) (citations omitted). Here, nothing in the record indicates the trial court considered the reasonableness of the order before ordering defendant to enroll in the SBM program for the rest of his natural life. This failure violated defendant's Fourth Amendment rights.
 
 See
 
 id.
 

 Therefore, it would be appropriate to grant writ of certiorari to hear this issue, and I would exercise the discretion to do so.
 

 To prevent manifest injustice, I would also invoke Rule 2. The trial court deprived defendant of a substantial right when it did not address the reasonableness of subjecting him to SBM for the rest of his life.
 
 See
 

 Bursell
 
 , --- N.C. App. at ----,
 
 813 S.E.2d at 467
 
 ("It is axiomatic that a constitutional right is a 'substantial right.' "). Although this deprivation
 
 *281
 
 does not
 
 require
 
 us to invoke Rule 2, in view of the gravity of subjecting defendant to a potentially unreasonable search for life in violation of his substantial rights under the Fourth Amendment, and the State's concession that, had this issue been properly preserved, the trial court's failure would amount to reversible error, I would invoke Rule 2 to review defendant's argument.
 

 I now turn to the merits of defendant's argument. Because nothing in the record indicates the trial court considered the reasonableness of ordering defendant's lifelong participation in the SBM program, as required by
 
 Grady
 
 , there was
 
 Grady
 
 error. The State concedes this error. I would vacate the SBM order without prejudice to the State's ability to file a subsequent SBM application.
 

 [1]
 

 A pseudonym is used for the privacy of the victim.