An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1080

Filed 20 August 2025

Guilford County, Nos. 21CRS087234-400; 21CRS087236-400; 21CRS087237-400; 22CRS065217-400

STATE OF NORTH CAROLINA

v.

PHILIPPE JOSEPH SAIEED

Appeal by Defendant from judgments entered 11 January 2024 and as amended 22 October 2024 by Judge Michael D. Duncan in Guilford County Superior Court. Heard in the Court of Appeals 20 May 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Whitney N. Shaffer, for the State.*

*William D. Spence for the Defendant.*

WOOD, Judge.

Philippe Joseph Saieed ("Defendant") appeals from the judgements entered upon jury verdicts finding him guilty of attempted first-degree forcible rape, two counts of felony breaking or entering, first-degree burglary, and attempted first-degree burglary. Defendant makes three arguments on appeal. First, the trial court

erred in denying his motion to dismiss for insufficiency of the evidence on the charges of felony breaking or entering. Second, the trial court erred in denying his motion to dismiss for insufficiency of the evidence on the charge of attempted burglary. Third, the trial court erred in denying his motion to dismiss for insufficiency of the evidence on the charge of attempted first-degree rape. For the reasons stated herein, we hold Defendant received a fair trial free from error.

## I. Factual and Procedural Background

On 5 December 2021, Defendant, who was thirty-nine years old at the time, went out for the evening to a nightclub in Greensboro with his co-worker, Tyrone Willard ("Willard"). Defendant contends while at the nightclub he met a woman named Sarah, a student at High Point University ("HPU"). Defendant says he and Sarah were mutually attracted to each other and that she invited him to come "snuggle" with her. Defendant purports he and Sarah left the nightclub separately when it closed for the evening, but Sarah gave him verbal directions on how to get to where she lived, in the "McEwen apartment[s]" at HPU. They did not exchange phone numbers and Defendant claims he has never been to HPU and is not familiar with that area of town. After leaving the nightclub, Defendant and Willard drove around Greensboro for a bit looking for something to eat before heading towards HPU to see Sarah. Defendant claims he had "a few drinks that night, but [he] wasn't intoxicated."

Defendant attempted to drive onto HPU campus, but the entrance gate did not open, so he backed up and headed toward the welcome center where he was able to drive onto campus. Defendant parked his vehicle and first stopped at the Graham building located at 935 Roberts Hall Lane upon entering campus. He pulled at the door handle to find it locked and then pulled harder to break the door open. Defendant entered the building and then exited shortly after, next walking to the back of a library located at 936 Roberts Hall Lane. Defendant again used force to pull the locked library door open and entered. Interior cameras captured Defendant in the library building and then again exiting shortly after. Defendant claims he was looking for a bathroom when he entered both buildings.

Defendant next walked to the back of McEwen Residence Hall ("McEwen"), a female only freshman residence hall, which can only be entered by card swipe or using enough force to jerk it open. After jerking the door open and causing damage to it, Defendant entered the building at 5:41 AM and went up the stairs to the second floor. Defendant first stopped at Room 222 at the end of the hall and began pushing and pulling on the doorknob attempting to open it before moving on. "Gina"[1] the sole occupant of Room 222 at the time, testified to being woken up from the sound of Defendant trying to enter her room. Gina texted her mother that evening, "I think somebody just tried to break into my room." Next, Defendant went to the first floor

---

[1] To protect the identity of the victims, the pseudonyms "Gina," "Alice," and "Betty" are used throughout.

of McEwen and entered the room of "Alice" and "Betty" a suite style room with two twin beds on opposite walls that shares an adjoining bathroom with another suite style room. This door was unlocked and Defendant entered.

Alice woke up from the feel of Defendant rubbing his hand up and down her leg towards her vagina over her pajamas. Alice testified "[she] woke up, and [] kind of realized what was going on. And [] looked to [her] side, and [] saw a completely naked man next to [her] bed." She did not give consent for anyone to touch her like that. She started hitting Defendant with her hands and started to yell and cry as he put his hands around her torso and threw her to the floor, so aggressively her body broke a chair on the way down. At this point Betty, Alice's roommate, woke up and noticed what was happening as she saw Defendant on top of Alice. Betty jumped from her bed and started fighting with Defendant. Defendant covered Alice's mouth and nose with her comforter that had also fallen to the floor, making it difficult for her to breathe and scream. Alice testified Defendant "repeatedly screamed in [her] face saying, '[s]hut up, shut the fuck up, I'm going to fuck you, I'm fucking you right now.'" Betty was able to slip away and went to the hallway to scream for help. At that point Alice was able to kick Defendant in the head with her foot. Defendant then started running backwards towards the bathroom.

Alice was able to escape and ran down the hall in the same direction as Betty where another girl let them into her room to seek safety. They called 911. Alice's sweatshirt was ripped leaving her "pretty much half exposed. And [she] also had a

scratch all the way down [her] cheek." She also suffered bruising on her knees and back and rolled her ankle when running to escape. HPU security cameras capture Defendant first leaving the room and then going back into the room and then leaving again after putting on an undergarment. He left the building the same way he entered, running the same path back to his vehicle with "one sock on and one sock off." Defendant got into his vehicle, stayed there for a minute, and then got back out, taking off his other sock before running back to re-enter the building to gather his clothes from Alice's room. He then ran back to his vehicle and drove off campus with Willard still in the vehicle. Later that day officers arrested Defendant at his home.

Defendant does not deny his presence at HPU but testified that the events of the entire evening were a "big misunderstanding." Defendant testified he "was never going to have sex with anybody," and only took off his clothes "[t]o use the bathroom." He further claims he did not take all of his clothes off on purpose and that his shorts "probably got knocked off when the girl behind me jumped on me" causing him to be left naked.

On 14 March 2022, the grand jury returned five true bills of indictment against Defendant. Defendant was indicted on two counts of attempted first-degree rape, two counts of assault on a female, two counts of felony breaking or entering, one count of first-degree burglary, and one count of attempted first-degree burglary.

Defendant's matter came on for trial on 8 January 2024. During trial, the State dismissed both counts of assault on a female. On 10 January 2024, the jury

found Defendant guilty of one count of attempted first-degree forcible rape, two counts felony breaking or entering, one count of first-degree burglary, and one count of attempted first-degree burglary. The trial court sentenced Defendant at a prior record level II, to a term of 180 to 276 months of active imprisonment for the conviction of attempted first-degree rape, 73 to 100 months of active imprisonment for the conviction of first-degree burglary, 29 to 47 months of active imprisonment for the conviction of felony breaking or entering, and 8 to 19 months of active imprisonment for the other conviction of felony breaking or entering with each term to run consecutively. Defendant gave notice of appeal in open court.

## II. Analysis

Defendant raises three issues on appeal. First, Defendant contends the trial court erred in denying his motion to dismiss the charges of felony breaking or entering into the buildings on Roberts Hall Lane because the evidence presented at trial was "insufficient to show [he] entered either of those two building[s] with the intent to commit any felony therein, and certainly not with intent to commit first-degree rape." Second, Defendant contends the trial court erred in denying his motion to dismiss the charge of attempted burglary of Room 222 because the evidence presented at trial was "insufficient to show an attempt to 'break' and/or that [he] was possessed at that time with an intent to commit first-degree rape upon any occupant who happened to be in [R]oom 222 at the time he tested the door." And third, Defendant contends the trial court erred in denying his motion to dismiss the charge of attempted first-degree

rape of Alice because no evidence was presented "of the employment, display, use, or attempted use of a deadly weapon" at trial.

## A. Standard of Review

"A criminal defendant's motion to dismiss is reviewed *de novo*." *State v. Tucker*, 291 N.C. App. 379, 385, 895 S.E.2d 882, 888 (2023). "In ruling on a motion to dismiss, the trial court must determine whether there is substantial evidence of each element of the offense charged, and that the defendant is the perpetrator." *State v. Williams*, 330 N.C. 579, 584, 411 S.E.2d 814, 818 (1992). This Court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Holloway*, 250 N.C. App. 674, 678, 793 S.E.2d 766, 770 (2016).

> If there is substantial evidence of each element of the offense charged or lesser included offenses, the trial court must deny a defendant's motion to dismiss as to those charges supported by substantial evidence and submit them to the jury for its consideration; the weight and credibility of such evidence is a question reserved for the jury.

*Williams*, 330 N.C. at 584, 411 S.E.2d at 818.

Evidence is viewed "in the light most favorable to the State, giving the State the benefit of all reasonable inferences that can be drawn from the evidence." *Holloway*, 250 N.C. App. at 678, 793 S.E.2d at 770. Therefore, "[e]vidence presented by the State need only provide a reasonable inference of guilt in order for the motion

to be denied and the case submitted to the jury." *Id.*

**B. Motion to Dismiss the Attempted First-Degree Rape Charge**

Defendant argues to be found guilty of attempted first-degree forcible rape, there must have been evidence presented to show he displayed a dangerous weapon or that he inflicted serious personal injuries upon Alice. Defendant argues that he "entered the lady's dorm room naked. He had no weapon. He displayed no weapon. And neither [Alice] or [Betty] saw or testified about a weapon." The State argued at trial that Defendant inflicted serious personal injury on Alice and that Defendant used his body as a weapon. Further, the State argues on appeal that attempted first-degree rape may be found upon serious personal injury alone if it is found that there was not sufficient evidence presented to support the Defendant used his body as a dangerous weapon. We conclude the State's evidence that Defendant inflicted serious personal injury to Alice was sufficient to send the charge of attempted first-degree rape of Alice to the jury, thus we do not address Defendant's argument to the sufficiency of the State's evidence regarding Defendant's use of a dangerous weapon. *State v. Elder*, 278 N.C. App. 493, 501, 863 S.E.2d 256, 265 (2021).

"The elements of attempted first-degree rape are as follows: '(i) that defendant had the specific intent to rape the victim and (ii) that defendant committed an act that goes beyond mere preparation but falls short of the actual commission of the rape.'" *State v. Owen*, 159 N.C. App. 204, 206, 582 S.E.2d 689, 691 (2003) (quoting *State v. Schultz*, 88 N.C. App. 197, 200, 362 S.E.2d 853, 855 (1987)). For a person to

be found guilty of forcible rape, the person must be found to "engage[] in vaginal intercourse with another person by force and against the will of the other person, and" that person "does *any* of the following: (1) [u]ses, threatens to use, or displays a dangerous or deadly weapon or . . . (2) [i]nflicts serious personal injury upon the victim or another person." N.C. Gen. Stat. § 14-27.21(a) (emphasis added). "Proof of the element of 'serious personal injury' for first-degree rape 'may be met by the showing of mental injury as well as bodily injury.'" *Elder*, 278 N.C. App. at 501, 863 S.E.2d at 265.

To prove serious personal injury

> based on mental or emotional harm, the State must show that (1) the defendant caused the harm; (2) the harm extended for some appreciable period beyond the incidents surrounding the crime; and (3) the harm was more than *res gestae* results that are inherent to every forcible rape or sexual offense.

*State v. Gentle*, 260 N.C. App. 269, 273, 817 S.E.2d 833, 838 (2018). "*Res gestae* results are those so closely connected to an occurrence or event in both time and substance as to be a part of the happening." *State v. Harding*, 258 N.C. App. 306, 319, 813 S.E.2d 254, 264 (2018) (cleaned up) (quoting *State v. Finney*, 358 N.C. 79, 90, 591 S.E.2d 863, 869 (2004)).

Here, the State presented evidence sufficient to support a finding of serious bodily and mental injury based on the following evidence: (1) Defendant threw Alice with such force that her body broke a chair; (2) Alice's body was bruised and

scratched; (3) Alice's clothing was ripped; (4) Alice injured her ankle during her escape from Defendant; (5) Alice left HPU and went home for the rest of the semester because she no longer felt safe on campus; and (6) Alice participated in therapy specializing in victims of assault for a year and half. Additionally, Alice testified,

> I had a lot of trouble sleeping for a while. I – I had really bad nightmares for about two months, and I would not want to go to sleep because I thought I'd be waken up in my sleep again, and I just didn't feel safe when I closed my eyes. I would get nervous around certain angry men or like certain looks. I – my anxiety, which I didn't really have before, was through the roof. And I was just very – very angry at the world, which is not my personality. I just wasn't myself.

In sum, the State presented evidence that prior to Defendant entering her dorm room, Alice was able to live on campus without fear and anxiety but afterwards she had trouble sleeping, had to leave campus, and spent a year and a half in therapy. Specifically, the year and a half Alice spent attending therapy is sufficient to support a finding by the jury that the mental injuries at issue "extended for some appreciable time beyond the incidents surrounding the crime itself." *State v. Baker*, 336 N.C. 58, 65, 441 S.E.2d 551, 555 (1994) (holding periods of 9-12 months after a rape to be sufficient for a reasonable juror to "conclude that the victim's injuries extended for some appreciable time beyond the incidents surrounding the crime itself and that the injuries suffered are not *res gestae* results present in every forcible rape.").

Taken in the light most favorable to the State and given the benefit of all reasonable inferences, we hold the trial court did not err by denying Defendant's

motion to dismiss. The State presented sufficient evidence to allow the jury to decide whether the Defendant was culpable of attempted first-degree rape of Alice.

**C. Felonious Breaking or Entering**

Defendant argues the State presented insufficient evidence to show "intent to commit any felony therein, and certainly not with intent to commit first degree rape." Defendant does not challenge it was he who entered the buildings but contends he did not intend to commit a felony, only to use the bathroom. Further, Defendant points to Captain Stutts' testimony to show that he did not take anything from the buildings. When the trial court informs the jury that the felonious intent alleged is a specific felony, "the State [has] the burden of proving by substantial evidence that, at the time of the breaking or entering, defendant had that specific felonious intent." *State v. Parker*, 350 N.C. 411, 425, 516 S.E.2d 106, 117 (1999).

The elements of "felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein." *Williams*, 330 N.C. at 585, 411 S.E.2d at 818. "[T]he jury may find the defendant's intent at the time of the breaking or entering from his subsequent acts." *Id.* On appeal, Defendant only argues the State did not put forth sufficient evidence of the third element, "the intent to commit any felony or larceny therein."

Here, the trial court instructed the jury on both felonious and non-felonious breaking or entering. In his brief, Defendant contends "the trial judge instructed the jury that the defendant's intent in this case was to commit first degree rape inside

both vacant buildings rather than any other felony." The trial court instructed the jury:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant broke into or entered a building without the consent of the owner or tenant, intending at the time to commit a felony, first-degree rape therein, it would be your duty to return a verdict of guilty of felonious breaking or entering.

The jury ultimately found Defendant guilty of felonious breaking or entering the buildings at Roberts Hall Lane under N.C. Gen. Stat. § 14-54(a). Based on Defendant's subsequent acts, the State presented evidence to support a reasonable inference of Defendant's guilt to have possessed the intent to commit a felony, first-degree rape, when he entered both buildings.

Specifically, the following evidence was presented at trial: The doors to both 935 and 936 Roberts Hall Lane were locked at the time of Defendant's entry. Defendant claims he entered both buildings because he "had to use the bathroom really bad" and he thought the buildings would be open, claiming he thought they would be open because they always were during this time at North Carolina State University. Despite the door to the first building being locked Defendant decided to pull on it "a little harder" and go inside, claiming he left when he could not find a bathroom despite both buildings containing bathrooms. Upon reaching the second building, Defendant saw it was a library and thought "maybe they had a bathroom in there." Again, Defendant pulled the locked door so hard it opens and he enters the

building, again claiming he exited because he "didn't see any bathroom" and he "didn't see anybody, and it was kind of strange." Subsequently, despite having to use the bathroom so badly, Defendant next proceeded to break into McEwen residence hall where he entered the first unlocked room he came upon. Once inside of the room, Defendant got undressed after seeing a "body laying down" in a bed and proceeded to touch Alice without her consent. Defendant claimed he got undressed because he needed to "use the bathroom really bad." Testimony was presented that building doors are locked by a magnetic shutting/locking mechanism that takes a force of 200 to 300 lbs. to jerk it open like Defendant did. In sum, based on Defendant's acts leading up to and after breaking and entering 935 and 936 Roberts Hall Lane, the evidence presented shows Defendant removed his clothing and attempted to rape the first person with whom he came in contact. Viewed in the light most favorable to the State, the evidence presented is sufficient to suggest that Defendant had the intent to commit first-degree rape when he entered either building as he believed they could have been occupied. The trial court did not err by denying Defendant's motion to dismiss. The State presented sufficient evidence to allow the jury to decide whether the Defendant was culpable of felonious breaking or entering.

**D. Motion to Dismiss the Attempted First-Degree Burglary Charge**

Defendant argues the State presented insufficient evidence for the charge of attempted burglary. Specifically, Defendant argues the evidence was insufficient to support the elements of breaking or intent to commit first-degree rape upon any

occupant who happened to be in Room 222 at the time he tested the door handle.

> In order for a defendant to be convicted of first-degree burglary, the State must present substantial evidence that there was (i) the breaking (ii) and entering (iii) in the nighttime (iv) into the dwelling house or sleeping apartment (v) of another (vi) which is actually occupied at the time of the offense (vii) with the intent to commit a felony therein.

*State v. McDaris*, 274 N.C. App. 339, 344, 852 S.E.2d 403, 407 (2020) (cleaned up) (quoting *State v. Goldsmith*, 187 N.C. App. 162, 165, 652 S.E.2d 336, 339 (2007)). "An attempt to commit a crime is an act done with intent to commit that crime, carried beyond mere preparation to commit it, but falling short of its actual commission." *State v. Martin*, 191 N.C. App. 462, 472, 665 S.E.2d 471, 477 (2008) (quoting *State v. Goodman*, 71 N.C. App. 343, 345, 322 S.E.2d 408, 410 (1984)).

"A breaking in the law of burglary constitutes any act of force, however slight, 'employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open, or closed.'" *State v. Jolly*, 297 N.C. 121, 127-28, 254 S.E.2d 1, 5-6 (1979). "Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. Intent to commit a felony may be inferred from the defendant's acts and conduct during the subject incident." *State v. Lucas*, 234 N.C. App. 247, 254, 758 S.E.2d 672, 677 (2014) (cleaned up).

In *State v. Mims*, a defendant was observed walking up to several houses and "fiddl[ing] with the door knobs, before entering another dwelling." 241 N.C. App. 611,

613, 774 S.E.2d 349, 351 (2015). Ultimately, the defendant in *Mims* was convicted of attempted first-degree burglary and argued on appeal that there was insufficient evidence of his intent to commit a felony. *Id.* at 614, 774 S.E.2d at 352. This Court found the evidence to be sufficient and that the defendant in *Mims* "fail[ed] to articulate a logical connection" between the evidence of him fiddling with doorknobs and the inference that he "needed 'some kind of assistance' or was searching for someone." *Id.* at 617, 774 S.E.2d at 353. This Court reinforced the assertion made by a witness in *State v. Lucas*, a case with similar facts, that "it's just not normal activity for someone to be walking from house to house to see if it's occupied or not." *Id.* at 617, 774 S.E.2d at 354 (quoting *Lucas*, 234 N.C. App. at 255, 758 S.E.2d at 678). This Court in *Mims* held "that this behavior was not evidence of a non-criminal purpose." *Mims*, 241 N.C. App. at 617, 774 S.E.2d at 354.

Defendant contends that testing the door of Gina's room to see if it was unlocked is not sufficient evidence of attempted burglary without any further effort to get inside the room. In contrast, the State argues they presented sufficient evidence to support the charge of attempted burglary with the intent to commit first-degree rape.

Here, the evidence presented shows that Defendant tried to open Gina's dorm room when he tested to see if the door was locked. Although Defendant contends, he was just checking to see if the door was unlocked, his subsequent actions suggest that if Gina's door had been unlocked, he would have entered just as he had Alice's room

wherein he proceeded to take off his clothes and touch her without her consent.

It is not normal for a thirty-nine-year-old man to be walking the halls of an all-female freshmen dormitory checking to see if doors are unlocked, and Defendant did not articulate a logical connection between the evidence of him "checking" doorknobs and the inference that he needed to go to the bathroom "real bad" and could not find one in the other buildings he had entered. A reasonable jury could find that this behavior tends to support a criminal purpose and his intent to commit a felony. *See id.* at 617, 774 S.E.2d at 353-54.

Additionally, Defendant did not leave the building when he found the door locked. Rather, he continued to another room, and when he found that door unlocked, he entered, took off his clothes, and touched the occupant without her consent. The State presented sufficient evidence to allow the jury to decide whether Defendant was guilty of attempted burglary, and the trial court did not err by denying Defendant's motion to dismiss.

## III. Conclusion

For the reasons stated herein, we hold the trial court did not err in denying Defendant's motion to dismiss. The State presented evidence sufficient for the trial court to submit the charges to the jury. Thus, Defendant received a fair trial free from error.

NO ERROR.

Judges STROUD and CARPENTER concur.

Report per Rule 30(e).